JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Carol Anderson
3665 Station Avenue #14, Center Valley, PA 18034

**(b)** County of Residence of First Listed Plaintiff    Lehigh Cty
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Scott E. Schermerhorn, Esquire, The Ritz Bldg., 222 Wyoming Ave.,
Scranton, PA 18503 (570) 348-1020

## DEFENDANTS

Allstate Insurance Company, 2775 Sanders Road, Northbrook, IL
60062-6110

County of Residence of First Listed Defendant    Cook Cty
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
Laura E. Kerns, Esq., Bennett, Bricklin & Saltzburg, LLC
6000 Sagemore Dr., Suite 6103, Marlton, NJ 08053 (856) 673-3470

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ❏ 1   U.S. Government Plaintiff
- ❏ 2   U.S. Government Defendant
- ❏ 3   Federal Question *(U.S. Government Not a Party)*
- ☒ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ❏ 1 | Incorporated *or* Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated *and* Principal Place of Business In Another State | ❏ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❏ 625 Drug Related Seizure of Property 21 USC 881 | ❏ 422 Appeal 28 USC 158 | ❏ 375 False Claims Act |
| ❏ 120 Marine | ❏ 310 Airplane | ❏ 365 Personal Injury - Product Liability | ❏ 690 Other | ❏ 423 Withdrawal 28 USC 157 | ❏ 376 Qui Tam (31 USC 3729(a)) |
| ❏ 130 Miller Act | ❏ 315 Airplane Product Liability | ❏ 367 Health Care/ | | | ❏ 400 State Reapportionment |
| ❏ 140 Negotiable Instrument | ❏ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ❏ 410 Antitrust |
| ❏ 150 Recovery of Overpayment & Enforcement of Judgment | ❏ 330 Federal Employers' Liability | Product Liability | | ❏ 820 Copyrights | ❏ 430 Banks and Banking |
| ❏ 151 Medicare Act | ❏ 340 Marine | ❏ 368 Asbestos Personal Injury Product Liability | | ❏ 830 Patent | ❏ 450 Commerce |
| ❏ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ❏ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ❏ 835 Patent - Abbreviated New Drug Application | ❏ 460 Deportation |
| ❏ 153 Recovery of Overpayment of Veteran's Benefits | ❏ 350 Motor Vehicle | ❏ 370 Other Fraud | **LABOR** | ❏ 840 Trademark | ❏ 470 Racketeer Influenced and Corrupt Organizations |
| ❏ 160 Stockholders' Suits | ❏ 355 Motor Vehicle Product Liability | ❏ 371 Truth in Lending | ❏ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ❏ 480 Consumer Credit |
| ❏ 190 Other Contract | ❏ 360 Other Personal Injury | ❏ 380 Other Personal Property Damage | ❏ 720 Labor/Management Relations | ❏ 861 HIA (1395ff) | ❏ 490 Cable/Sat TV |
| ❏ 195 Contract Product Liability | ❏ 362 Personal Injury - Medical Malpractice | ❏ 385 Property Damage Product Liability | ❏ 740 Railway Labor Act | ❏ 862 Black Lung (923) | ❏ 850 Securities/Commodities/ Exchange |
| ❏ 196 Franchise | | | ❏ 751 Family and Medical Leave Act | ❏ 863 DIWC/DIWW (405(g)) | ❏ 890 Other Statutory Actions |
| | | | | ❏ 864 SSID Title XVI | ❏ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❏ 790 Other Labor Litigation | ❏ 865 RSI (405(g)) | ❏ 893 Environmental Matters |
| ❏ 210 Land Condemnation | ❏ 440 Other Civil Rights | **Habeas Corpus:** | ❏ 791 Employee Retirement Income Security Act | | ❏ 895 Freedom of Information Act |
| ❏ 220 Foreclosure | ❏ 441 Voting | ❏ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ❏ 896 Arbitration |
| ❏ 230 Rent Lease & Ejectment | ❏ 442 Employment | ❏ 510 Motions to Vacate Sentence | | ❏ 870 Taxes (U.S. Plaintiff or Defendant) | ❏ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ❏ 240 Torts to Land | ❏ 443 Housing/ Accommodations | ❏ 530 General | | ❏ 871 IRS—Third Party 26 USC 7609 | ❏ 950 Constitutionality of State Statutes |
| ❏ 245 Tort Product Liability | ❏ 445 Amer. w/Disabilities - Employment | ❏ 535 Death Penalty | **IMMIGRATION** | | |
| ❏ 290 All Other Real Property | ❏ 446 Amer. w/Disabilities - Other | **Other:** ❏ 540 Mandamus & Other | ❏ 462 Naturalization Application | | |
| | ❏ 448 Education | ❏ 550 Civil Rights | ❏ 465 Other Immigration Actions | | |
| | | ❏ 555 Prison Condition | | | |
| | | ❏ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ❏ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ❏ 3 Remanded from Appellate Court
- ❏ 4 Reinstated or Reopened
- ❏ 5 Transferred from Another District *(specify)*
- ❏ 6 Multidistrict Litigation - Transfer
- ❏ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. 1332, 1441 and 1446

Brief description of cause:
breach of contract, bad faith pursuant to 42 Pa. C.S.A. 8371

## VII. REQUESTED IN COMPLAINT:

❏ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes   ❏ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
02/07/2018

SIGNATURE OF ATTORNEY OF RECORD
*Laura E. Kerns #87021*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 3665 Station Avenue #14, Center Valley, PA 18034
Address of Defendant: 2775 Sanders Road, Northbrook, IL 60062-6127
Address of Co-Defendant:

Place of Accident, Incident or Transaction 3665 Station Avenue #14, Center Valley, PA 18034

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))   Yes☐   No X

Does this case involve multidistrict litigation possibilities?   Yes☐   No X
*RELATED CASE, IF ANY:*

Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:
1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes☐   No X
2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes☐   No X
3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?   Yes☐   No X

CIVIL: (Place ✓ in ONE CATEGORY ONLY)
A. *Federal Question Cases:*          B. *Diversity Jurisdiction Cases:*
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts     1. X Insurance Contract and Other Contracts
2. ☐ FELA                              2. ☐ Airplane Personal Injury
3. ☐ Jones Act-Personal Injury         3. ☐ Assault, Defamation
4. ☐ Antitrust                         4. ☐ Marine Personal Injury
5. ☐ Patent                            5. ☐ Motor Vehicle Personal Injury
6. ☐ Labor-Management Relations        6. ☐ Other Personal Injury (Please specify)
7. ☐ Civil Rights                      7. ☐ Products Liability
8. ☐ Habeas Corpus                     8. ☐ Products Liability — Asbestos
9. ☐ Securities Act(s) Cases           9. ☐ All other Diversity Cases
10. ☐ Social Security Review Cases            (Please specify)
11. ☐ All other Federal Question Cases
      (Please specify)

**ARBITRATION CERTIFICATION**
*(Check appropriate Category)*
I, _____, counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.
DATE: _____
_____ Attorney-at-Law      _____ Attorney I.D.#
**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: February 7, 2018    Laura E. Kenny
CIV. 609 (4/03)         Attorney-at-Law         87021    Attorney I.D.#

APPENDIX I

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA
## CASE MANAGEMENT TRACK DESIGNATION FORM

| | |
|---|---|
| **CAROL ANDERSON** | : |
| | : |
| v. | : |
| | : NO: |
| **ALLSTATE INSURANCE** | : |
| **COMPANY** | : |
| | : |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants.  (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a)  Habeas Corpus – Cases brought under 28 U.S.C. §2241 through §2255.                                   (   )

(b)  Social Security – Cases requesting review of a decision of the Secretary of Health
       and Human Services denying plaintiff Social Security Benefits                                               (   )

(c)  Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.     (   )

(d)  Asbestos – Cases involving claims for personal injury or property damage from
       exposure to asbestos.                                                                                                              (   )

(e)  Special Management – Cases that do not fall into tracks (a) through (d) that are
       commonly referred to as complex and that need special or intense management by
       the court.  (See reverse side of this form for a detailed explanation of special
       management cases.)                                                                                                              (   )

(f) Standard Management – Cases that do not fall into any one of the other tracks.                     ( X )

| | | |
|---|---|---|
| **2/7/2018** | *Laura E. Kerns* | **Allstate Insurance Company** |
| **Date** | **Laura E. Kerns, Esquire** | **Attorney for Defendant** |
| | | |
| **(856) 673-3470** | **(856) 751-5281** | **kerns@bbs-law.com** |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **CAROL ANDERSON** | : |
| | : |
| **v.** | : |
| | : **NO:** |
| **ALLSTATE INSURANCE** | : |
| **COMPANY** | : |
| | : |

## <u>NOTICE OF REMOVAL</u>

AND NOW, comes the defendant, Allstate Insurance Company, for the purpose only of removing this case to the United States District Court for the Eastern District of Pennsylvania and respectfully avers as follows:

1.      This is a civil action filed and now pending in the Court of Common Pleas of Lehigh County, Pennsylvania, Docket No: 2018-C-24.

2.      The action was initiated in the aforementioned court by the filing of a Complaint on January 3, 2018.  (A true and correct copy of the complaint is attached hereto as Exhibit "A.")

3.      Defendant, Allstate Insurance Company, was served with the Complaint on January 10, 2018.

4.      The averments made herein are true and correct with respect to the date and time upon which suit was commenced and the date upon which this notice is being filed.

5.      This suit is of a civil nature. Plaintiff's complaint alleges that she is a resident and citizen of the Commonwealth of Pennsylvania, with her residence located at 3665 Station Avenue #14, Center Valley, Pennsylvania 18034.  <u>See</u> Exhibit "A".  Plaintiff does not allege any alternative state of residence.  Accordingly, upon information and belief, the Commonwealth of

Pennsylvania is the state in which plaintiff is domiciled and, therefore, the state of which plaintiff is a citizen for purposes of determining diversity.

6.      Allstate Insurance Company, is now, and was at the time plaintiff commenced this action and filed her complaint, a corporation organized under the laws of the State of Illinois with its principal place of business at 2775 Sanders Road, Northbrook, IL 60062; therefore, defendant is a citizen of Illinois for purposes of determining diversity.  See 28 U.S.C. § 1332(c)(1).

7.      Defendant, Allstate Insurance Company, has simultaneously with the filing of this notice, given written notice to plaintiff.

8.      Defendant, Allstate Insurance Company, is also filing a copy of the instant notice of removal and all attachments thereto with the Prothonotary of the Court of Common Pleas of Lehigh County.

9.      The Complaint asserts breach of contract and bad faith pursuant to 42 Pa.C.S.A. § 8371.  The amount in controversy is listed as to each count of the Complaint in excess of $50,000[1].

10.     In her bad faith claim, pursuant to 42 Pa. C.S.A. §8371, plaintiff seeks in addition to compensatory damages, interest upon the amount of the contract claim against defendant at prime rate plus six percent, punitive damages, attorney's fees and costs.

11.     Defendant seeks to remove this matter to the United States District Court for the Eastern District of Pennsylvania.  Defendant asserts that the amount in controversy in this matter exceeds $75,000.  As the moving party, defendant bears the burden of proving that jurisdiction is proper in federal court.  Russ vs. State Farm Mut. Auto. Ins. Co., 961 F.Supp. 808, 810 (E.D. Pa.

---

[1] Moreover, defense counsel contacted plaintiff's counsel to determine if plaintiff would be willing to stipulate to capping damages at $75,000 to avoid removal of the matter to this Court. Plaintiff's counsel advised that plaintiff was not willing to do so.

1997).

12.     In determining whether the jurisdiction amount has been satisfied, the Court must first look at the Complaint.  Angus vs. Shiley, Inc., 989 F.2d 142, 145 (3rd Circ. 1993).

13.     The underlying lawsuit as alleged in the Complaint arises out of defendant's handling of a property damage claim to plaintiffs' property located at 3665 Station Avenue #14, Center Valley, Pennsylvania 18034, for a loss that occurred on or about March 16, 2017.

14.     There is no specific assertion as to the amount in controversy set forth in plaintiff's complaint, except to aver that the amount in controversy is "at least $43,400."  See ¶28 of Complaint, Exhibit "A."

15.     With reference to her bad faith claim pursuant to 42 Pa. C.S.A.§8371, plaintiff pleads damages in excess of $50,000, and alleges that she will seek attorney's fees.  These damages must also be included in determining the amount in controversy.  Neff vs. General Motors Corp., 163 F.R.D. 478, 482 (E.D. Pa. 1995).  It would not be unreasonable to expect that over the course of an approximate six month litigation, counsel could incur costs and fees in an amount approaching $10,000.

16.     In addition, it is anticipated that plaintiff will also seek punitive damages pursuant to 42 Pa. C.S.A. §8371.  Whether both actual and punitive damages are recoverable, punitive damages are properly considered in determining whether the jurisdictional amount has been satisfied.  Bell vs. Preferred Life Assurance Soc'y, 320 U.S. 238, 240, 88 L. Ed. 15, 64 S. Ct. 5 (1943).  The contractual amount in controversy alleged in the Complaint is in excess of $50,000 based on the allegations in the Complaint, coupled with estimated reasonable attorneys' fees, and if plaintiff is able to sustain a finding of bad faith, although the propriety of same is disputed by moving defendant, it is not unreasonable to expect that a punitive damage award five or six times

the amount in controversy could be rendered by the trier of fact.

**WHEREFORE**, Defendant, Allstate Insurance Company, hereby removes this suit to

this Honorable Court pursuant to the laws of the United States in such cases made and provided.

BENNETT, BRICKLIN & SALTZBURG LLC

By: _____

LAURA E. KERNS, ESQUIRE
Attorney I.D. No. 87021
6000 Sagemore Drive, Suite 6103
Marlton, NJ 08053
(856) 673-3470
Email: kerns@bbs-law.com
Attorney for Defendant,
Allstate Insurance Company

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **CAROL ANDERSON** | : |
| | : |
| **v.** | : |
| | : **NO:** |
| **ALLSTATE INSURANCE** | : |
| **COMPANY** | : |
| | : |

<u>**NOTICE**</u>

**TO:**   Scott E. Schermerhorn, Esquire
          The Ritz Building
          222 Wyoming Avenue
          Scranton, PA 18503

　　　　PLEASE TAKE NOTICE that defendant, Allstate Insurance Company, has filed in this Court a verified Notice for Removal of the State Court action, <u>Carol Anderson v. Allstate Insurance Company</u>, now pending in the Court of Common Pleas of Lehigh County, Pennsylvania, Case No: 2018-C-24.

　　　　PLEASE TAKE FURTHER NOTICE that a certified copy of the Notice of Removal will be filed with the Prothonotary of the Court of Common Pleas of Lehigh County, Pennsylvania.

　　　　PLEASE BE ADVISED that by virtue of 28 U.S.C. §1446(f), the State action is now removed to this Court.  The State Court has no further jurisdiction over this action and you should proceed no further in that Court or under its authority.

　　　　　　　　　　　　　　　　**BENNETT, BRICKLIN & SALTZBURG LLC**

　　　　　　　　　　　　　　　　*Laura E. Kerns*

**By:**　　_____
　　　　　　LAURA E. KERNS, ESQUIRE
　　　　　　Attorney I.D. No. 87021
　　　　　　6000 Sagemore Drive, Suite 6103
　　　　　　Marlton, NJ 08053
　　　　　　(856) 673-3470
　　　　　　Email: kerns@bbs-law.com
　　　　　　Attorney for Defendant,
　　　　　　Allstate Insurance Company

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CAROL ANDERSON | : | |
| | : | |
| v. | : | |
| | : | NO: |
| ALLSTATE INSURANCE | : | |
| COMPANY | : | |
| | : | |

**DEFENDANT'S CERTIFICATION OF FILING OF**
**COPY OF NOTICE OF REMOVAL WITH STATE COURT**

Laura E. Kerns, Esquire, being duly sworn according to law, deposes and says that she is

a member with the law firm of Bennett, Bricklin & Saltzburg LLC, attorneys for defendant,

Allstate Insurance Company.

That she did direct the filing with the Prothonotary of the Court of Common Pleas of

Lehigh County a copy of the Notice of Removal, attached hereto, said filing to be made on

February 7, 2018.

BY: _Laura E. Kerns_

LAURA E. KERNS, ESQUIRE
Bennett Bricklin Saltzburg, LLC
Attorney for Defendant
Attorney I.D. No. 87021
6000 Sagemore Drive, Suite 6103
Marlton, NJ 08053
(856) 673-3470
Email: kerns@bbs-law.com

Sworn to and subscribed
before me this 7th day of
of February, 2018.

NOTARY PUBLIC
SOPHIA M. HEINZE
NOTARY PUBLIC OF NEW JERSEY
COMMISSION EXPIRES JUNE 9, 2018

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CAROL ANDERSON | : |
| | : |
| v. | : |
| | : **NO:** |
| ALLSTATE INSURANCE | : |
| COMPANY | : |
| | : |

## CERTIFICATE OF SERVICE

Laura E. Kerns, Esquire, being duly sworn according to law, deposes and says that she is an attorney with the law firm of Bennett, Bricklin & Saltzburg LLC, attorneys for defendant, Allstate Insurance Company, and that she certifies that a true and correct copy of this Removal Petition was filed electronically and is available for viewing and downloading from the Electronic Case filing system which constitutes service upon the following counsel of record:

Scott E. Schermerhorn, Esquire
The Ritz Building
222 Wyoming Avenue
Scranton, PA 18503

BENNETT, BRICKLIN & SALTZBURG LLC

By:  *Laura E. Kerns*

LAURA E. KERNS, ESQUIRE
Attorney I.D. No. 87021
6000 Sagemore Drive, Suite 6103
Marlton, NJ 08053
(856) 673-3470
Fax: (856) 751-5281
Email: kerns@bbs-law.com
Attorney for Defendant,
Allstate Insurance Company

**Sworn to and subscribed**
**before me this 7th day**
**of February, 2018.**

NOTARY PUBLIC

SOPHIA M. HEINZE
NOTARY PUBLIC OF NEW JERSEY
COMMISSION EXPIRES JUNE 9, 2018

**<u>AFFIDAVIT</u>**

I, Laura E. Kerns, Esquire, being duly sworn according to law, do hereby depose and state that I am the attorney for Defendant, Allstate Insurance Company, the Petitioner in the foregoing Notice of Removal, that I have been duly authorized by the Petitioner to execute this Affidavit, that I am familiar with the facts involved in this matter, and that the allegations set forth in the foregoing Notice of Removal are true and correct to the best of my knowledge, information and belief.

_____
**LAURA E. KERNS, ESQUIRE**


**DATE:**   February 7, 2018

# EXHIBIT "A"

# Supreme Court of Pennsylvania

## Court of Common Pleas
## Civil Cover Sheet

_____ Lehigh _____ **County**

| For Prothonotary Use Only: |
| --- |
| Docket No: 2018-C-24 |

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

## SECTION A

**Commencement of Action:**
- ☐ Complaint
- ☐ Transfer from Another Jurisdiction
- ☐ Writ of Summons
- ☐ Petition
- ☐ Declaration of Taking

| Lead Plaintiff's Name: | Lead Defendant's Name: |
| --- | --- |
| Carol Anderson | Allstate Insurance Company |

**Are money damages requested?** ☒ Yes  ☐ No

**Dollar Amount Requested:** (check one)  ☐ within arbitration limits  ☒ outside arbitration limits

**Is this a *Class Action Suit*?** ☐ Yes  ☒ No

**Is this an *MDJ Appeal*?** ☐ Yes  ☒ No

Name of Plaintiff/Appellant's Attorney:  Scott E. Schermerhorn, Esquire

☐ **Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)**

## SECTION B

**Nature of the Case:** Place an "X" to the left of the **ONE** case category that most accurately describes your *PRIMARY CASE*. If you are making more than one type of claim, check the one that you consider most important.

**TORT** (*do not include Mass Tort*)
- ☐ Intentional
- ☐ Malicious Prosecution
- ☐ Motor Vehicle
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability (*does not include mass tort*)
- ☐ Slander/Libel/ Defamation
- ☐ Other: _____

**MASS TORT**
- ☐ Asbestos
- ☐ Tobacco
- ☐ Toxic Tort - DES
- ☐ Toxic Tort - Implant
- ☐ Toxic Waste
- ☐ Other: _____

**PROFESSIONAL LIABLITY**
- ☐ Dental
- ☐ Legal
- ☐ Medical
- ☐ Other Professional: _____

**CONTRACT** (*do not include Judgments*)
- ☐ Buyer Plaintiff
- ☐ Debt Collection: Credit Card
- ☐ Debt Collection: Other
- ☐ Employment Dispute: Discrimination
- ☐ Employment Dispute: Other
- ☐ Other: Insurance - Bad Faith

**REAL PROPERTY**
- ☐ Ejectment
- ☐ Eminent Domain/Condemnation
- ☐ Ground Rent
- ☐ Landlord/Tenant Dispute
- ☐ Mortgage Foreclosure: Residential
- ☐ Mortgage Foreclosure: Commercial
- ☐ Partition
- ☐ Quiet Title
- ☐ Other: _____

**CIVIL APPEALS**
Administrative Agencies
- ☐ Board of Assessment
- ☐ Board of Elections
- ☐ Dept. of Transportation
- ☐ Statutory Appeal: Other
- ☐ Zoning Board
- ☐ Other: _____

**MISCELLANEOUS**
- ☐ Common Law/Statutory Arbitration
- ☐ Declaratory Judgment
- ☐ Mandamus
- ☐ Non-Domestic Relations Restraining Order
- ☐ Quo Warranto
- ☐ Replevin
- ☐ Other: _____

*Updated 1/1/2011*

SCOTT E. SCHERMERHORN, ESQUIRE
Identification No. 60177
The Ritz Building
222 Wyoming Avenue
Scranton, PA 18503
(570) 348-1020

ATTORNEY FOR PLAINTIFF,
CAROL ANDERSON



**CAROL ANDERSON**                          :
3665 Station Avenue #14                     :
Center Valley, PA 18034                     :
                                            :
                    Plaintiff               :
        v.                                  :
                                            :
**ALLSTATE INSURANCE COMPANY**  :
2775 Sanders Road                           :
Northbrook, IL 60062                        :
                                            :
                    Defendant               :

IN THE COURT OF COMMON PLEAS
OF LEHIGH COUNTY

CIVIL ACTION - LAW

**JURY TRIAL DEMANDED**

No.: 2017-Civil- 2018 -C- 24

---

## NOTICE

You have been sued in Court.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so, the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the Plaintiff.  You may lose money or property or other rights important to you.

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICES SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.**

**IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.**

LEHIGH COUNTY BAR ASSOCIATION
LAWYER REFERRAL SERVICE
P.O. BOX 1324
ALLENTOWN, PA 18105
TELEPHONE: 610-433-7094

Complaint Notice Page.wpd

SCOTT E. SCHERMERHORN, ESQUIRE
Identification No. 60177
The Ritz Building
222 Wyoming Avenue
Scranton, PA 18503
(570) 348-1020

ATTORNEY FOR PLAINTIFF,
CAROL ANDERSON




| | |
|---|---|
| **CAROL ANDERSON** | IN THE COURT OF COMMON PLEAS |
| 3665 Station Avenue #14 | OF LEHIGH COUNTY |
| Center Valley, PA 18034 | |
| | CIVIL ACTION - LAW |
| Plaintiff | |
| v. | **JURY TRIAL DEMANDED** |
| **ALLSTATE INSURANCE COMPANY** | |
| 2775 Sanders Road | |
| Northbrook, IL 60062 | No.: 2017-Civil- *2018 C-24* |
| Defendant | |

## COMPLAINT

AND NOW, comes the Plaintiff, Carol Anderson, by and through her attorney, Scott E. Schermerhorn, Esquire, and files the within Complaint against the Defendant, Allstate Insurance Company, and in support thereof, avers as follows:

1.    Plaintiff, Carol Anderson, is an adult individual residing at 3665 Station Avenue #14, Center Valley, Lehigh County, Pennsylvania 18034.

2.    Defendant, Allstate Insurance Company [hereinafter referred to as "Allstate"], is a foreign corporation organized and existing under the laws of the State of Illinois with its registered office located at 2775 Sanders Road, Northbrook, Illinois.  At all times material herein, Allstate regularly conducted business in the Commonwealth of Pennsylvania.

3.    Defendant, Allstate, was at all times mentioned herein, and still is, qualified to

Complaint.wpd

transact business as an insurer within the Commonwealth of Pennsylvania and regularly engages in the sale of insurance in Pennsylvania at the present time.

4.    At all times material herein, the Defendant was acting by and through its agents, representatives, workmen, employees, servants and/or other authorized individuals and/or entities on its behalf.

5.    Plaintiff has been insured with Allstate continuously since 1965 (i.e. over 52 years).

6.    Plaintiff's Homeowner's Insurance Policy, specifically, Policy #008 747 936, renewed with Allstate providing various coverages, to include, the dwelling and other structure protection which served as the Plaintiff's residence located at 3665 Station Avenue #14, Center Valley, County of Lehigh, Pennsylvania.  (Attached hereto and made a part hereof is a true and correct copy of the aforementioned Homeowner's Policy with Declarations marked Exhibit "A")

7.    At all times material herein, the Plaintiff maintained insurance through Policy #008 747 936, as aforesaid, and described in Exhibit "A".

8.    The insurance contract provides in pertinent part as follows:

"Section I - Your Property

COVERAGE B - OTHER STRUCTURES PROTECTION

Property We Cover Under Coverage B:

1.    "Structures at the address shown on the Policy
Declarations separated from **your dwelling** by
clear space."

9.    The insurance contract further provides in pertinent part as follows:

"Section I - Your Property

COVERAGE C - Personal Property Protection

Property We Cover Under Coverage C:

1.    Personal property owned or used by an
      **insured person** anywhere in the world ...."

10.    The insurance contract further provides in pertinent part for debris removal and

temporary repairs after a loss. (See Additional Coverages, Paragraphs 3 and 6).

11.    The insurance contract further provides in pertinent part coverage for loss of use.

12.    The insurance contract provides coverage for direct physical loss to property, unless

limited or excluded under the policy.

13.    The insurance contract provides coverage for risk of direct physical loss to property

described in Coverage C, Paragraph 10, due to:

"Weight of ice, snow or sleet which causes damage to
personal property in a **building structure**, but only if
the **building structure** is damaged due to the weight
of ice, snow or sleet." ·

14.    On or about March 16, 2017, the Plaintiff's detached garage collapsed due to the

weight of ice and snow following a substantial snow storm on or about March 14,

2017.

15.    Plaintiff immediately reported the subject loss to the Defendant, Allstate.

16.    The subject loss was caused by the weight of ice and snow.

17.    Plaintiff cooperated with any and all requests by the Defendant, and provided all

relevant information requested by the Defendant.

18.    By correspondence dated April 19, 2017, the Defendant notified the Plaintiff that her

claim was denied because "the loss is not sudden/acid. The poor condition as

outlined by our engineer's report of the detach garage and long term neglect is not covered under your policy." (Attached hereto and made a part hereof is a true and correct copy of said correspondence dated 04/19/17, marked Exhibit "B.")

19. The detached garage was not in poor condition, and there was no neglect. To the contrary, the Defendant's denial constitutes a breach of the terms and conditions by the Defendant under the policy.

20. The covered loss by the collapse due to the weight of ice and snow is a covered loss under the policy.

### Count I
### Breach of Contract

21. Plaintiff incorporates herein by reference the allegations set forth in the foregoing paragraphs.

22. The subject insurance policy provides coverage due to a loss caused by the weight of ice and snow.

23. The subject loss was not excluded by the subject policy, and was not due to alleged neglect or a poor condition of the garage.

24. Plaintiff has paid all premiums and otherwise satisfied all conditions and covenants and performed all things required of her under the insurance contract between the Plaintiff and the Defendant.

25. As a result of the aforesaid loss, the Plaintiff has suffered a covered loss within the meaning of the insurance contract.

26. Defendant is obligated by the terms of the insurance contract to indemnify the Plaintiff's losses and act in good faith in the evaluation, handling and processing of

the Plaintiff's claim.

27.     Defendant's refusal to indemnify the Plaintiff's loss and/or the Defendant's unreasonable delay in making payment to the Plaintiff constitutes a breach of the insurance contract.

28.     As a direct and proximate result of the Defendant's breach, the Plaintiff has suffered a covered loss to the detached structure in the amount of at least $43,400.

29.     As a direct and proximate result of the Defendant's breach, the Plaintiff has suffered a covered loss of personal property.

30.     As a direct and proximate result of the Defendant's breach, the Plaintiff has suffered a covered loss to be determined as it is ongoing for loss of use of the damaged structure.

31.     As a direct and proximate result of the Defendant's breach, the Plaintiff has further been damaged by having to expend sums necessary for temporary repairs or mitigation to the damage caused by the covered loss.

32.     As a direct and proximate result of the Defendant's breach, the Plaintiff is entitled to debris removal for the necessary repairs to the dwelling.

WHEREFORE, the Plaintiff, Carol Anderson, demands judgment against the Defendant, Allstate Insurance Company, in an amount greater than Fifty Thousand Dollars ($50,000.00), together with costs, interest, damages for delay, and such other relief as this Court deems just and proper.

### Count II
### Bad Faith Liability – 42 Pa.C.S. §8371

33.     Plaintiff incorporates herein by reference the allegations set forth in the foregoing

Complaint.wpd

paragraphs.

34.     Defendant's conduct and actions by denying the claim and/or conducting an improper

investigation, constitutes bad faith on the part of the Defendant towards its insured

in that the Defendant:

(a)     failed to promptly and reasonably respond to the Plaintiff's demands for
        prompt payment of the Plaintiff's claimed loss;

(b)     unreasonably and vexatiously refused to honor the claim and make payment
        of benefits to the Plaintiff when it was clear that immediate payment of the
        Plaintiff's losses were covered, justified and warranted;

(c)     required the Plaintiff to needlessly expend additional time, expense, and
        effort in order to obtain payment of the Plaintiff's losses which would not be
        necessary if the Defendant acted in good faith and promptly paid the Plaintiff
        the losses rightly due to her;

(d)     denied, failed and/or refused to pay the Plaintiff's claimed loss without
        reasonable foundation or basis to do so;

(e)     forced the Plaintiff to unnecessarily incur significant expenses by failing to
        promptly pay the claimed loss that was rightly due to her;

(f)     failed to adopt and implement reasonable standards for prompt investigation
        and payment of the Plaintiff's claimed losses arising out of the Plaintiff's
        Homeowners' insurance contract;

(g)     failed to conduct a reasonable investigation into the loss;

(h)     failed to attempt in good faith to effectuate a prompt, fair, and equitable
        settlement of the Plaintiff's claimed loss;

(i)     failed to exercise the utmost good faith and discharge of its statutory and
        contractual duties to the Plaintiff;

(j)     failed to properly inspect the property;

(k)     disregarded information provided to it from the Plaintiff;

(l)     hired, retained and relied upon the opinion of an engineer or other
        professional knowing that such opinion would be favorable to the Defendant

on a financial incentive basis;

(m)     disregarded information provided to it from the Plaintiff and/or her representative that the Defendant's inspection and/or engineering report was inadequate and/or flawed and/or erroneous in that the engineer failed to inspect the rafters and/or structural supports which failed under the weight of ice and snow from the largest snowstorm in 20 years, and despite an obvious and apparent inspection that showed that the failed structural supports had nothing to do with alleged neglect or poor condition of the structure; and/or

(n)     engaged in unfair claims settlement and insurance practices in violation of common law and Defendant's statutory obligations.

WHEREFORE, the Plaintiff, Carol Anderson, requests that this Honorable Court take the following actions pursuant to 42 Pa.Cons. Stat. §8371:

1.     Award interest on the amount of the Plaintiff's claim against the Defendant, Allstate Insurance Company from the date the claim was made at a rate equal to the prime rate plus six percent (6%)

2.     Award punitive damages against the Defendant;

3.     Assess court costs and reasonable attorney's fees against the Defendant; and/or

4.     Award such other relief as necessary and proper.

Scott E. Schermerhorn, Esquire
Attorney for the Plaintiff, Carol Anderson
The Ritz Building
222 Wyoming Avenue
Scranton, PA 18503
(570) 348-1020

Complaint.wpd

SCOTT E. SCHERMERHORN, ESQUIRE      ATTORNEY FOR PLAINTIFF,
Identification No. 60177                        CAROL ANDERSON
The Ritz Building
222 Wyoming Avenue
Scranton, PA 18503
(570) 348-1020

| | | |
|---|---|---|
| **CAROL ANDERSON** | : | IN THE COURT OF COMMON PLEAS |
| 3665 Station Avenue #14 | : | OF LEHIGH COUNTY |
| Center Valley, PA 18034 | : | |
| | : | CIVIL ACTION - LAW |
| Plaintiff | : | |
| | : | **JURY TRIAL DEMANDED** |
| v. | : | |
| | : | |
| **ALLSTATE INSURANCE COMPANY** | : | |
| 2775 Sanders Road | : | |
| Northbrook, IL 60062 | : | |
| | : | No.: 2017-Civil-_____ |
| Defendant | : | |

## VERIFICATION

    I, Carol Anderson, the undersigned, verify that the statements made in the foregoing Complaint are true and correct. I understand that false statements herein are made subject to the penalties of 18 Pa.C.S., Section 4904, relating to unsworn falsification to authorities.


                                _____
                                  Carol Anderson

Verification.wpd

SCOTT E. SCHERMERHORN, ESQUIRE                    ATTORNEY FOR PLAINTIFF,
Identification No. 60177                          CAROL ANDERSON
The Ritz Building
222 Wyoming Avenue
Scranton, PA 18503
(570) 348-1020

| | | |
|---|---|---|
| **CAROL ANDERSON** | : | IN THE COURT OF COMMON PLEAS |
| 3665 Station Avenue #14 | : | OF LEHIGH COUNTY |
| Center Valley, PA 18034 | : | |
| | : | CIVIL ACTION - LAW |
| Plaintiff | : | |
| v. | : | **JURY TRIAL DEMANDED** |
| | : | |
| **ALLSTATE INSURANCE COMPANY** | : | |
| 2775 Sanders Road | : | |
| Northbrook, IL 60062 | : | |
| | : | No.: 2017-Civil- _____ |
| Defendant | : | |

## <u>VERIFICATION</u>

I, Carol Anderson, the undersigned, verify that the statements made in the foregoing Complaint are true and correct. I understand that false statements herein are made subject to the penalties of 18 Pa.C.S., Section 4904, relating to unsworn falsification to authorities.

*Carol Anderson*
Carol Anderson

Verification.wpd



Claim# 0449868842

To Whom It May Concern:

I, _____Jeremy LeBeau_____, employee of Allstate Insurance Company Irving, Texas, do certify that the enclosed is a copy of policy and or declaration page for the above claim number, showing the coverages that were on the policy at the time of loss of 03/16/2017_____. The enclosed copy of policy and or declaration page was printed and mailed through Allstate's Output Processing Center.

_____
Claim Support

State of Texas, County of Dallas

On this ___3rd___ day of _____July_____. 2017, before me personally appeared _Jeremy LeBeau_ to me known to be the person who executed the foregoing instrument and acknowledged that he/she executed the same as a free act and deed.

PATRICIA TORRES
Notary Public, State of Texas
My Commission Expires
October 31, 2017

_____
Notary Public

G52-3

EXHIBIT

A



You're in good hands.

*Heydt Ins Agcy Inc.*
*704 W Emaus Avenue*
*Allentown PA 18103*

Information as of April 5, 2016
Policyholder(s)                    Page 1 of 2
**Carol Anderson PO Bx 14**
Policy number
008 747 936

Your Allstate agency is
**Heydt Ins Agcy Inc.**
(610) 791-9800
jheydt@allstate.com

CAROL ANDERSON
3665 STATION AVE # 14
CENTER VALLEY PA 18034-9579

## Thank You for Being a Loyal Allstate Customer—We're Happy to Have You with Us!

Here's your Deluxe Homeowners insurance renewal offer for the next 12 months. We've also included a guide to what's in this package and answers to some common questions.

### Renewing your policy is easy
Keep an eye out for your bill, which should arrive in a couple of weeks. Just send your payment by the due date on your bill.

If you're enrolled in the Allstate Easy Pay Plan, you won't receive a bill—we'll send you a statement with your payment withdrawal schedule.

You also won't receive a bill if a mortgage company or lienholder pays your insurance premium for you.

### How to contact us
Give your Allstate Agent a call at (610) 791-9800 if you have any questions. It's our job to make sure you're in good hands.

Sincerely,

*Thomas Wilson*

Thomas J. Wilson
President, Allstate Insurance Company

RP378-4



Policy number:            008 747 936                                          Page **2** of 2
Policy effective date:    May 20, 2016
Your Allstate agency is   Heydt Ins Agcy Inc.
                          (610) 791-9800

## Your Insurance Coverage Checklist

We're happy to have you as an Allstate customer! This checklist outlines what's in this package and provides answers to some basic questions, as well as any "next steps" you may need to take.

☐ **What's in this package?**
See the guide below for the documents that are included. ***Next steps:*** review your *Policy Declarations* to confirm you have the coverages, coverage limits, premiums and savings that you requested and expected. Read any *Endorsements* or *Important Notices* to learn about new policy changes, topics of special interest, as well as required communications. Keep all of these documents with your other important insurance papers.

☐ **Am I getting all the discounts I should?**
Confirm with your Allstate Agent that you're benefiting from all the discounts you're eligible to receive.

☐ **What about my bill?**
Unless you've already paid your premium in full, we'll send your bill separately. ***Next steps:*** please pay the minimum amount by the due date listed on it.

You can also pay your bill online at allstate.com or by calling 1-800-ALLSTATE (1-800-255-7828). Para español, llamar al 1-800-979-4285. If you're enrolled in the Allstate® Easy Pay Plan, we'll send you a statement detailing your payment withdrawal schedule.

☐ **What if I have questions?**
You can either contact your Allstate Agent or call us 24/7 at 1-800-ALLSTATE (1-800-255-7828) – para español, llamar al 1-800-979-4285 – with questions about your coverage, or to update your coverages, limits, or deductibles. Or visit us online at allstate.com.

## A guide to your renewal package

  

**Policy Declarations***
The Policy Declarations lists policy details, such as your property details and coverages.

**Important Notices**
We use these notices to call attention to particularly important coverages, policy changes and discounts.

**Insurance Made Simple**
Insurance seem complicated? Our online guides explain coverage terms and features: www.allstate.com/madesimple Espanol.allstate.com/facildeentender

*** To make it easier to see where you may have gaps in your protection, we've highlighted any coverages you do not have in the *Coverage Detail* section in the enclosed *Policy Declarations*.**

## Renewal Deluxe Homeowners Policy Declarations

Your policy effective date is May 20, 2016


### Allstate.
You're in good hands.

Page **1** of 3

## Total Premium for the Premium Period (Your bill will be mailed separately)

| | |
|---|---|
| Premium for property insured | $1,462.10 |
| **Total** | **$1,462.10** |

*If you do not pay in full, you will be charged an installment fee(s). Refer to your bill for installment fee information.*

## Discounts (included in your total premium)

| | | | |
|---|---|---|---|
| Home and Auto | **30%** | Claim Free | **10%** |
| 55 and Retired | **10%** | | |

## Location of property insured

3665 Station Ave, Center Valley, PA 18034-9579

## Legal description

3665 STATION AVE CENTER VALLEY PA 18034

## Rating Information

The dwelling is of brick veneer construction and is occupied by 1 family

## Mortgagees (listed in order of precedence)

SOVEREIGN BANK AUTO/PROP (10-421-DC3)
P O Box 12646, Reading, PA 19612-2646
Loan number: 4537107278

SOVEREIGN BANK AUTO/PROP (10-421-DC3)
P O Box 12646, Reading, PA 19612-2646
Loan number: 4539393758

## Additional Interested Party

None

Information as of April 5, 2016

## Summary

Named Insured(s)
**Carol Anderson PO Bx 14**

Mailing address
**3665 Station Ave**
**Center Valley PA 18034-9579**

Policy number
**008 747 936**

Your policy provided by
**Allstate Insurance Company**

Policy period
Begins on **May 20, 2016** at 12:01 A.M. standard time, with no fixed date of expiration

Premium period
Beginning **May 20, 2016** through **May 20, 2017** at 12:01 A.M. standard time

Your Allstate agency is
**Heydt Ins Agcy Inc.**
704 W Emaus Avenue
Allentown PA 18103
(610) 791-9800
jheydt@allstate.com

Some or all of the information on your Policy Declarations is used in the rating of your policy or it could affect your eligibility for certain coverages. Please notify us immediately if you believe that any information on your Policy Declarations is incorrect. We will make corrections once you have notified us, and any resulting rate adjustments, will be made only for the current policy period or for future policy periods. Please also notify us immediately if you believe any coverages are not listed or are inaccurately listed.

PA07078D



Renewal Deluxe Homeowners Policy Declarations
Policy number:                   008 747 936
Policy effective date:       May 20, 2016
Your Allstate agency is    Heydt Ins Agcy Inc.
                                       (610) 791-9800

## Coverage detail for the property insured

| Coverage | Limits of Liability | Applicable Deductible(s) |
|---|---|---|
| Dwelling Protection - with Building Structure Reimbursement Extended Limits | $434,000 | • $500 All peril |
| Other Structures Protection | $43,400 | • $500 All peril |
| Personal Property Protection - Reimbursement Provision | $303,800 | • $500 All peril |
| Additional Living Expense | Up to 12 months | |
| Family Liability Protection | $100,000 each occurrence | |
| Guest Medical Protection | $1,000 each person | |
| Building Codes | Not purchased* | |
| Business Property Protection | Not purchased* | |
| Business Pursuits | Not purchased* | |
| Electronic Data Processing Equipment | Not purchased* | |
| Extended Coverage on Cameras | Not purchased* | |
| Extended Coverage on Jewelry, Watches and Furs | Not purchased* | |
| Extended Coverage on Musical Instruments | Not purchased* | |
| Extended Coverage on Sports Equipment | Not purchased* | |
| Fire Department Charges | Not purchased* | |
| Golf Cart | Not purchased* | |
| Home Day Care | Not purchased* | |
| Identity Theft Expenses | Not purchased* | |
| Incidental Office, Private School Or Studio | Not purchased* | |
| Increased Coverage on Money | Not purchased* | |
| Increased Coverage on Securities | Not purchased* | |
| Increased Silverware Theft Limit | Not purchased* | |
| Loss Assessments | Not purchased* | |
| Satellite Dish Antennas | Not purchased* | |

* This coverage can provide you with valuable protection. To help you stay current with
  your insurance needs, contact your agent to discuss available coverage options and
  other products and services that can help protect you.

PA070RBD

010 070 037
1604055300164
1100000530015401 0PA0001604050110320014310020060009996

Renewal Deluxe Homeowners Policy Declarations
Policy number: **008 747 936**
Policy effective date: May 20, 2016
Your Allstate agency is Heydt Ins Agcy Inc.
(610) 791-9800



Allstate.
You're in good hands.

Page **3** of 3

## Scheduled Personal Property Coverage

*Your policy does not include Scheduled Personal Property Coverage. This coverage can provide you with valuable protection. To help you stay current with your insurance needs, contact your agent to discuss available coverage options and other products and services that can help protect you.*

## Your policy documents

Your Homeowners policy consists of the Policy Declarations and the following documents. Please keep them together.

- Deluxe Homeowners Policy – AP324-1
- Building Structure Reimbursement Extended Limits Endorsement – AP357
- Amendment Of Policy Provisions – AP4664-1
- Pennsylvania Deluxe Homeowners Policy And Deluxe Plus Homeowners Policy Amendatory Endorsement – AP1300-2
- Sinkhole Activity Coverage Endorsement – AP4868

## Important payment and coverage information

Here is some additional, helpful information related to your coverage and paying your bill:

► Coverage A - Dwelling Protection Limit includes an approximate increase of $2,000 due to the Property Insurance Adjustment provision. Coverage B - Other Structures Protection and Coverage C - Personal Property Protection adjusted accordingly.

► Please note: This is not a request for payment. Your bill will be mailed separately.

Allstate Insurance Company's Secretary and President have signed this policy with legal authority at Northbrook, Illinois.

Thomas J. Wilson
President

Susan L. Lees
Secretary

PA0700RBD



## Important notices

Policy number: **008 747 936**
Policy effective date: May 20, 2016
Your Allstate agency is Heydt Ins Agcy Inc.
(610) 791-9800



**Allstate.**
You're in good hands.

Page **1** of 3

## We've Increased Your Coverage Limits

You may have noticed that we have increased your Dwelling Protection–Coverage A limits and, as a result, your premium may be higher.

As you may know, your policy includes a feature called "Property Insurance Adjustment" (PIA). PIA reflects changes in construction costs in your area, including material and labor costs that may have occurred during the policy period. This information helps us estimate the amount of insurance coverage needed to cover the cost of rebuilding your home in the event of a covered total loss.

Your policy's PIA recently indicated an increase in construction costs in your market. Based on this information, we increased your Dwelling Protection limits to reflect the estimated replacement cost of your home.

Please consider whether the changes we made are sufficient. These estimates are based on what we believe are sound assumptions, but they are only estimates. It's possible that the new limits may not provide sufficient coverage in the event of a loss. For example, if you have done any remodeling to your home that is not reflected in our records, your home's value may be higher than our records indicate. In that case, you may want to increase your limits even more. On the other hand, it's possible that your new limits may provide a coverage amount that is greater than the cost of replacing your home. For example, if you originally insured your home based on a mortgage amount that exceeded your home's estimated replacement cost, you may want to call your Allstate representative to discuss the current value of your home and the possibility of lowering your limits.

If you have any questions about this change, or if you would like to update your information or discuss any other changes, please feel free to call your Allstate representative. Together, we can help you determine the coverage limits that are right for you.

**XM72**

## What You Should Know About Flood Insurance

Most homeowners, renters and commercial insurance policies do not provide coverage for flood damage. In fact, protection against floods is generally available only through a separate policy.

That's why Allstate is a participant in the National Flood Insurance Program (NFIP) and offers standard flood insurance policies.* A flood insurance policy can help complete the insurance protection for your property and help protect your financial well-being.

### You May Have More Risk from Flood Than You Think

Approximately 90 percent of all disasters in the U.S. are flood related. While you may think that it couldn't happen to you, over 25 percent of all flood losses occur in low- to moderate-risk areas.

What's more, flood damage is often accompanied by other damage, such as wind and hail (which is typically covered under a property policy). So if you purchase your NFIP coverage through Allstate, you would have the convenience and peace of mind that comes with working with just one claim adjuster and one agent, instead of two or more for a flood claim.

### Flood Coverage Is Affordable

The federal government sets the rates for flood insurance, so there's typically no difference in rates from policy to policy. You can switch to an NFIP flood insurance policy administered by Allstate for the same amount of premium you may be paying elsewhere. If you choose Allstate, you can have the quality service you've come to expect from us.

For more information about flood insurance, or if you have any questions about your policy in general, please contact your Allstate representative or visit us at allstate.com.

* Allstate provides the standard flood insurance policy under the terms of the National Flood Insurance Act of 1968 and its amendments, and Title 44 of the Code of Federal Regulations. The standard flood insurance policy is written by Allstate for the National Flood Insurance Program which is administered by the Federal Insurance Administration, part of the Federal Emergency Management Agency.

*Subject to availability and qualifications. Other terms, conditions and exclusions may apply.*

**X73168**

## Additional Protection for Your Most Valuable Possessions



Important notices
Policy number:            008 747 936
Policy effective date:    May 20, 2016
Your Allstate agency is   Heydt Ins Agcy Inc.
                          (610) 791-9800

Property insurance covers many belongings, but some items may require higher coverage limits than those in a standard property policy.

Scheduled Personal Property (SPP) coverage gives you additional protection against loss or damage to your valuables. It's protection not typically provided with standard property coverage. SPP benefits typically include:

- No deductibles to meet
- Coverage for lost or damaged items
- Coverage for valuables kept in a storage location outside your home

### Items That May Need the Extra Protection

SPP coverage provides protection for an array of valuable personal property. Here are some of the items you can protect by purchasing SPP coverage through Allstate:

- Jewelry (including wedding rings and precious or semi-precious stones)
- Furs
- Cameras (digital, still, movie, video and related equipment)
- Silverware and antiques (including furniture)
- Musical instruments
- Collections (stamps, coins, music)
- Fine art works (including paintings, etchings, vases and sculptures)
- Manuscripts or books
- Home-office equipment (laptop, computer, audio/visual)
- Sports equipment (such as golf clubs)

### Affordable Protection for Your Valuables

The cost of SPP coverage varies, but the value of your property is the best way to determine how much coverage you need. The rates are generally a small percentage of the total value of the items you're insuring. This means that your valuables are being protected for only a fraction of the cost.

### Regularly Review Your SPP Coverage

Even if you currently have SPP coverage, it's a good idea to review it annually. It's possible that the value of your property has changed or that you've purchased new items that have not been added to your coverage.

To learn more about SPP coverage, or if you have any questions about your insurance policy in general, contact your Allstate representative, or visit us at allstate.com.

X73169

# Other Allstate Companies Also Offer Homeowners Insurance—Giving You Additional Protection Options

We want to make sure you know that Homeowners insurance is available from different Allstate-branded companies—each with its own mix of price and coverage options. Although your current policy is with Allstate Insurance Company, Homeowners coverage from another Allstate-branded company can differ from your current policy in a number of ways, including:

- Price
- Coverage
- Features
- Discounts

### Things To Consider When Comparing Insurance Policies

When comparing different policies, you may want to consider the following:

- **Price** – While another company may offer a lower premium today, the premium could change in the future. Be sure to consider this.
- **Policy Features and Benefits** – Some of the policy features and benefits that your current policy has may not be available or carry over to the new company. Also, the new policy might not provide the same level of benefits as your current policy. And if you leave Allstate Insurance Company, you will not be able to return to that company or get the same rate.

### Your Allstate Agent Can Help

Your Allstate Agent is here and can discuss any options you might be interested in. We want to thank you again for choosing Allstate to protect what's important to you.

### A Brief Reminder

As you consider this information, keep in mind that there is a tool that insurance companies use to estimate home

Important notices
Policy number:          008 747 936
Policy effective date:   May 20, 2016
Your Allstate agency is  Heydt Ins Agcy Inc.
                         (610) 791-9800



You're in good hands.

Page **3** of 3

replacement cost called Residential Component Technology™
(RCT).

If you request a quote from another Allstate-branded company,
they may use RCT to estimate your home's replacement value.
Even if you stay with your current company, you can request
that we use RCT to estimate the replacement cost of your
home. This can help you confirm that your home is insured for
an amount that reflects its current estimated replacement
value.

If you'd like to know more about RCT, please contact your
Allstate Agent.

**X73084v2**



## Allstate Insurance Company

---

# Policy Endorsement

*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

---

### Pennsylvania
### Deluxe Homeowners Policy and Deluxe Plus Homeowners Policy
### Amendatory Endorsement – AP1300-2

This endorsement amends your Deluxe and Deluxe Plus Homeowners Policy and is in addition to all other amendatory endorsements which apply to this policy.

I. The following provisions are added to the General section:

**What Law Will Apply**
This policy is issued in accordance with the laws of Pennsylvania and covers property or risks principally located in Pennsylvania. Subject to the following paragraph, the laws of Pennsylvania shall govern any and all claims or disputes in any way related to this policy.

If a covered loss to property, or any other **occurrence** for which coverage applies under this policy happens outside Pennsylvania, claims or disputes regarding that covered loss to property, or any other covered **occurrence** may be governed by the laws of the jurisdiction in which that covered loss to property, or other covered **occurrence** happened, only if the laws of that jurisdiction would apply in the absence of a contractual choice of law provision such as this.

**Where Lawsuits May Be Brought**
Subject to the following two paragraphs, any and all lawsuits in any way related to this policy, shall be brought, heard and decided only in a state or federal court located in Pennsylvania. Any and all lawsuits against persons not parties to this policy but involved in the sale, administration, performance, or alleged breach of this policy, or otherwise related to this policy, shall be brought, heard and decided only in a state or federal court located in Pennsylvania, provided that such persons are subject to or consent to suit in the courts specified in this paragraph.

If a covered loss to property, or any other **occurrence** for which coverage applies under this policy happens outside Pennsylvania, lawsuits regarding that covered loss to property, or any other covered **occurrence** may also be brought in the judicial district where that covered loss to property, or any other covered **occurrence** happened.

Nothing in this provision, **Where Lawsuits May Be Brought**, shall impair any party's right to remove a state court lawsuit to a federal court.

II. In **Section I – Your Property**, under **Losses We Do Not Cover Under Coverages A and B**, the following changes are made:

A. The following is added to item 9:

Page 1 of 4

PROP "5100037130131530008741210"



## Allstate Insurance Company

This exclusion does not apply to loss caused by **you**, or any other person insured under this policy, who is an innocent victim of domestic abuse.

B.   Item 13.d) is replaced by:

13. d) rust or other corrosion;

III.   In **Section I - Your Property**, under **Losses We Do Not Cover Under Coverages A and B**, the following is added:

22.   Mold, fungus, wet rot, dry rot or bacteria. This includes any loss which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

This exclusion applies regardless of whether mold, fungus, wet rot, dry rot or bacteria arises from any other cause of loss, including but not limited to a loss involving water, water damage or discharge, which may otherwise be covered by this policy, except as specifically provided in **Section I, Conditions Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Water Loss.**

IV.   In **Section I - Your Property**, under **Losses We Do Not Cover Under Coverage C**, the following changes are made:

A.   The following is added to item 9:

This exclusion does not apply to loss caused by **you**, or any other person insured under this policy, who is an innocent victim of domestic abuse.

B.   The following is added:

15.   Mold, fungus, wet rot, dry rot or bacteria. This includes any loss which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

This exclusion applies regardless of whether mold, fungus, wet rot, dry rot or bacteria arises from any other cause of loss, including but not limited to a loss involving water, water damage or discharge, which may otherwise be covered by this policy, except as specifically provided in **Section I, Conditions Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Water Loss.**

V.   In **Section I - Your Property**, under **Additional Protection - Additional Living Expense** is replaced by the following:

1.   **Additional Living Expense**
   a)   We will pay the reasonable increase in living expenses necessary to maintain **your** normal standard of living when a direct physical loss **we** cover under **Coverage A - Dwelling Protection, Coverage B - Other Structures Protection** or **Coverage C -Personal Property Protection** makes **your** residence premises uninhabitable. However, additional living expense due to remediation of mold, fungus, wet rot or dry rot will not be paid in addition to any amounts paid or payable under **Section I, Conditions - Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Water Loss.**

Page 2 of 4

# Allstate Insurance Company

Payment for additional living expense as a result of a covered loss under **Coverage A - Dwelling Protection, Coverage B - Other Structures Protection** or **Coverage C - Personal Property Protection** will be limited to the least of the following:

1)  the time period required to repair or replace the property we cover, using due diligence and dispatch; or
2)  if **you** permanently relocate, the shortest time for **your** household to settle elsewhere;
3)  12 months.

b)  **We** will pay **your** lost fair rental income resulting from a covered loss under **Coverage A - Dwelling Protection, Coverage B - Other Structures Protection** or **Coverage C - Personal Property Protection**, less charges and expenses which do not continue, when a loss **we** cover under **Coverage A - Dwelling Protection, Coverage B - Other Structures Protection** or **Coverage C - Personal Property Protection** makes the part of the residence premises **you** rent to others, or hold for rental, uninhabitable. **We** will pay for lost fair rental income for the shortest time required to repair or replace the part rented or held for rental but not to exceed 12 months. However, payments for **your** lost fair rental income expense due to remediation of mold, fungus, wet rot or dry rot will not be paid in addition to any amounts paid or payable under **Section I, Conditions – Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Water Loss.**

c)  **We** will pay the reasonable and necessary increase in living expenses and the lost fair rental income for up to two weeks should civil authorities prohibit the use of the **residence premises** due to a loss at a neighboring premises caused by a loss **we** insure against. However, payments for increase in living expenses or **your** lost fair rental income expense due to remediation of mold, fungus, wet rot or dry rot will not be paid in addition to any amounts paid or payable under **Section I, Conditions – Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Water Loss.**

These periods of time are not limited by the termination of this policy.

**We** do not cover any lost income or expense due to the cancellation of a lease or agreement.

No deductible applies to this protection.

VI.  In **Section I - Conditions**, under item 5, **How We Pay For A Loss**, sub-item c) Building Structure Reimbursement, the first paragraph is replaced by the following:

c)  Building Structure Reimbursement. Under **Coverage A - Dwelling Protection** and **Coverage B - Other Structures Protection, we** will make additional payment to reimburse **you** for cost in excess of actual cash value if **you** repair, rebuild or replace damaged, destroyed or stolen covered property within 180 days of the actual cash value payment. This additional payment includes the reasonable and necessary expense for treatment or removal and disposal of contaminants, toxins or pollutants as required to complete repair or replacement of that part of a **building structure** damaged by a covered loss.

This additional payment shall not include any amounts which may be paid or payable under **Section I, Conditions – Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Water Loss**, and shall not be payable for any losses excluded in **Section I - Your Property**, under **Losses We Do Not Cover Under Coverages A and B**, item 22.

Page 3 of 4

PROP *S100037130131530087412111*

# Allstate Insurance Company

VII.  In **Section I - Conditions**, the following is added:

19.  **Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Water Loss**

In the event of a covered water loss under **Coverage A - Dwelling Protection, Coverage B - Other Structures Protection** or **Coverage C - Personal Property Protection**, we will pay up to $5,000 for mold, fungus, wet rot or dry rot remediation.

**Remediation** means the reasonable and necessary treatment, removal or disposal of mold, fungus, wet rot or dry rot as required to complete repair or replacement of property we cover under **Coverage A - Dwelling Protection, Coverage B - Other Structures Protection** or **Coverage C - Personal Property Protection** damaged by a covered water loss, including payment for any reasonable increase in living expenses necessary to maintain your normal standard of living if mold, fungus, wet rot or dry rot makes **your** residence premises uninhabitable. **Remediation** also includes any investigation or testing to detect, measure or evaluate mold, fungus, wet rot or dry rot.

This Condition does not increase the limits of liability under **Coverage A - Dwelling Protection, Coverage B - Other Structures Protection** or **Coverage C - Personal Property Protection.**

VIII.  In **Section II - Family Liability and Guest Medical Protection**, under **Losses We Do Not Cover Under Coverage X**, the following is added:

18.  We do not cover **bodily injury** or **property damage** which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

19.  We do not cover any liability imposed upon any **insured person** by any governmental authority for **bodily injury** or **property damage** which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

IX.  In **Section II - Family Liability and Guest Medical Protection**, under **Losses We Do Not Cover Under Coverage Y**, the following is added:

16.  We do not cover **bodily injury** which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or bacteria.

All other policy terms and conditions apply.

# Allstate Insurance Company Deluxe Homeowners Policy

PENNSYLVANIA

**Policy:** {{{{{{{{{{{{{{{

**Effective:** /////////////////

**Issued to:**
))))))))))))))))))))))))))))))))
))))))))))))))))))))))))))))))))
))))))))))))))))))))))))))))))))
))))))))))))))))))))))))))))))))



/////////////////////////////////////
{{{{{{{{{{{{{{{{{{{{{{{{{{{{{{{{{{{
{{{{{{{{{{{{{{{{{{{{{{{{{{{{{{{{{{
{{{{{{{{{{{{{{{{{{{{{{{{{{{{{{{{{{



Allstate Insurance Company
The Company Named in the Policy Declarations
A Stock Company—Home Office: Northbrook, Illinois 60062

AP324-1
(5/94)

*Table of Contents*

*General*

2   Definitions Used In This Policy
4   Insuring Agreement
4   Agreements We Make With You
4   Conformity To State Statutes
4   Coverage Changes
4   Policy Transfer
4   Continued Coverage After Your Death
5   Cancellation
5   Concealment Or Fraud

*Section I — Your Property*

*Coverage A*
*Dwelling Protection*

5   Property We Cover Under Coverage A
6   Property We Do Not Cover Under Coverage A

*Coverage B*
*Other Structures Protection*

6   Property We Cover Under Coverage B
6   Property We Do Not Cover Under Coverage B
6   Losses We Cover Under Coverages A and B
6   Losses We Do Not Cover Under Coverages A and B

*Coverage C*
*Personal Property Protection*

8   Property We Cover Under Coverage C
9   Limitations On Certain Personal Property
10  Property We Do Not Cover Under Coverage C
10  Losses We Cover Under Coverage C
12  Losses We Do Not Cover Under Coverage C

*Additional Protection*

13  Additional Living Expense
13  Credit Card, Bank Fund Transfer Card
     Check Forgery and Counterfeit Money
14  Debris Removal
14  Emergency Removal Of Property
14  Fire Department Charges

14  Temporary Repairs After A Loss
14  Trees, Shrubs, Plants and Lawns
15  Temperature Change
15  Power Interruption
15  Arson Reward
15  Land

*Section I Conditions*

15  Deductible
15  Insurable Interest and Our Liability
15  What You Must Do After A Loss
16  Our Settlement Options
16  How We Pay For A Loss
18  Our Settlement Of Loss
19  Appraisal
19  Abandoned Property
19  Permission Granted To You
19  Our Rights To Recover Payment
19  Our Rights To Obtain Salvage
19  Suit Against Us
19  Loss To A Pair Or Set
20  Glass Replacement
20  No Benefit To Bailee
20  Other Insurance
20  Property Insurance Adjustment
20  Mortgagee

*Section II — Family Liability and*
*Guest Medical Protection*

*Coverage X*
*Family Liability Protection*

21  Losses We Cover Under Coverage X
21  Losses We Do Not Cover Under Coverage X

*Coverage Y*
*Guest Medical Protection*

23  Losses We Cover Under Coverage Y
23  Losses We Do Not Cover Under Coverage Y

*Additional Protection*

25   Claim Expense
25   Emergency First Aid
25   Damage To Property Of Others

**Section II Conditions**

25   What You Must Do After An Accidental Loss
26   What An Injured Person Must Do—Coverage Y—
       Guest Medical Protection
26   Our Payment Of Loss—Coverage Y—
       Guest Medical Protection
26   Our Limits Of Liability
26   Bankruptcy
26   Our Rights To Recover Payment—Coverage
       X—Family Liability Protection
26   Suit Against Us
27   Other Insurance—Coverage X—Family
       Liability Protection

**Section III—Optional Protection**

*Optional Coverages
You May Buy*

27   Coverage BC
       Building Codes
27   Coverage BP
       Increased Coverage On Business Property
27   Coverage DP
       Increased Coverage On Electronic
       Data Processing Equipment
27   Coverage F
       Fire Department Charges
27   Coverage G
       Loss Assessments
28   Coverage J
       Extended Coverage On Jewelry, Watches
       and Furs
28   Coverage K
       Incidental Office, Private School
       or Studio
29   Coverage LR
       Lock Replacement
29   Coverage M
       Increased Coverage On Money

29   Coverage P
       Business Pursuits
29   Coverage S
       Increased Coverage On Securities
30   Coverage SD
       Satellite Dish Antennas
30   Coverage SE
       Portable Cellular Communication Systems
30   Coverage ST
       Increased Coverage On Theft of Silverware

**Definitions Used In This Policy**

1.  **'You'** or **'your'**—means the person named on the Policy Declarations as the insured and that person's resident spouse.

2.  **'Allstate,' 'we,' 'us,'** or **'our'**—means the company named on the Policy Declarations.

3.  **'Insured person(s)'**—means **you** and, if a resident of **your** household:
    a)  any relative; and
    b)  any dependent person in **your** care.

    Under **Coverage X—Family Liability Protection** and **Coverage Y—Guest Medical Protection, 'insured person'** also means:
    c)  any person or organization legally responsible for loss caused by animals or watercraft covered by this policy which are owned by an **insured person**. **We** do not cover any person or organization using or having custody of animals or watercraft in any **business**, or without permission of the owner.
    d)  with respect to the use of any vehicle covered by this policy, any person while engaged in the employment of an **insured person**

4.  **'Bodily injury'**—means physical harm to the body, including sickness or disease, and resulting death, except that **bodily injury** does not include:
    a)  any venereal disease;
    b)  Herpes;

c) Acquired Immune Deficiency Syndrome (AIDS);
d) AIDS Related Complex (ARC);
e) Human Immunodeficiency Virus (HIV);

or any resulting symptom, effect, condition, disease or illness related to (a) through (e) listed above.

Under **Coverage Y — Guest Medical Protection, bodily injury** means physical harm to the body, including sickness or disease, except that **bodily injury** does not include:
a) any venereal disease;
b) Herpes;
c) Acquired Immune Deficiency Syndrome (AIDS);
d) AIDS Related Complex (ARC);
e) Human Immunodeficiency Virus (HIV);

or any resulting symptom, effect, condition, disease or illness related to (a) through (e) listed above.

5. **'Building structure'** — means a structure with walls and a roof.

6. **'Business'** — means:
   a) any full or part—time activity of any kind engaged in for economic gain and the use of any part of any premises for such purposes. The providing of home day care services to other than an **insured person** or relative of an **insured person** for economic gain is also a **business**. However, the mutual exchange of home day care services is not considered a **business**;

   b) any property rented or held for rental by an **insured person**. Rental of **your residence premises** is not considered a **business** when:
      1) it is rented occasionally for residential purposes;

      2) a portion is rented to not more than two roomers or boarders; or
      3) a portion is rented as a private garage.

7. **'Residence premises'** — means the **dwelling**, other structures and land located at the address stated on the Policy Declarations.

8. **'Insured premises'** — means:
   a) the **residence premises**; and
   b) under **Section II** only:
      1) the part of any other premises, other structures and grounds used by **you** as a residence. This includes premises, structures and grounds **you** acquire for **your** use as a private residence while this policy is in effect;
      2) any part of a premises not owned by an **insured person** but where an **insured person** is temporarily living;
      3) cemetery plots or burial vaults owned by an **insured person**;
      4) vacant land, other than farmland, owned by or rented to an **insured person**;
      5) land owned by or rented to an **insured person** where a one, two, three or four family **dwelling** is being built as that person's residence;
      6) any premises used by an **insured person** in connection with the **residence premises**;
      7) any part of a premises occasionally rented to an **insured person** for other than business purposes.

9. **'Occurrence'** — means an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in **bodily injury** or **property damage**.

10. **'Property damage'** — means physical injury to or destruction of tangible property,

including loss of its use resulting from such physical injury or destruction.

11. **"Residence employee"** — means an employee of an **insured person** while performing duties arising out of and in the course of employment in connection with the maintenance or use of **your residence premises**. This includes similar duties performed elsewhere for an **insured person**, not in connection with the **business** of an **insured person**.

12. **"Dwelling"** — means a one, two, three or four family **building structure**, identified as the insured property on the Policy Declarations, where **you** reside and which is principally used as a private residence.

### Insuring Agreement
In reliance on the information **you** have given **us**, **Allstate** agrees to provide the coverages indicated on the Policy Declarations. In return, **you** must pay the premium when due and comply with the policy terms and conditions, and inform **us** of any change in title, use or occupancy of the **residence premises**.

Subject to the terms of this policy, the Policy Declarations shows the location of the **residence premises**, applicable coverages, limits of liability and premiums. The policy applies only to losses or **occurrences** that take place during the policy period. The policy period is shown on the Policy Declarations. This policy is not complete without the Policy Declarations.

The terms of this policy impose joint obligations on the person named on the Policy Declarations as the insured and on that person's resident spouse. These persons are defined as **you** or **your**. This means that the responsibilities, acts and omissions of a person defined as **you** or **your** will be binding upon any other person defined as **you** or **your**.

The terms of this policy impose joint obligations on persons defined as an **insured person**. This means that the responsibilities, acts and failures to act of a person defined as an **insured person** will be binding upon another person defined as an **insured person**.

### Agreements We Make With You
**We** make the following agreements with **you**:

### Conformity To State Statutes
When the policy provisions conflict with the statutes of the state in which the **residence premises** is located, the provisions are amended to conform to such statutes.

### Coverage Changes
When **Allstate** broadens coverage during the premium period without charge, **you** have the new features if **you** have the coverage to which they apply. Otherwise, the policy can be changed only by endorsement.

The coverage provided and the premium for the policy is based on information **you** have given **us**. **You** agree to cooperate with **us** in determining if this information is correct and complete. **You** agree that if this information changes, is incorrect or incomplete, **we** may adjust **your** coverage and premium accordingly during the policy period.

Any calculation of **your** premium or changes in **your** coverage will be made using the rules, rates and forms on file, if required, for **our** use in **your** state. The rates in effect at the beginning of **your** current premium period will be used to calculate any change in **your** premium.

### Policy Transfer
**You** may not transfer this policy to another person without **our** written consent.

### Continued Coverage After Your Death
If **you** die, coverage will continue for one hundred and eighty days after **your** death or until the sale of the insured property whichever event occurs

first, provided that the premiums for the coverage are paid. Coverage will continue for:

1) **your** legal representative while acting as such, but only with respect to the **residence premises** and property covered under this policy on the date of **your** death.

2) an **insured person**, and any person having proper temporary custody of **your** property until a legal representative is appointed and qualified.

### Cancellation

**Your** right to Cancel:
**You** may cancel this policy by notifying **us** of the future date **you** wish to stop coverage.

**Our** Right to Cancel:
**Allstate** may cancel this policy by mailing notice to **you** at the mailing address shown on the Policy Declarations. When this policy has been in effect for less than 60 days, and is not a renewal with **us**, **we** may cancel this policy for any reason.

When this policy has been in effect for 60 days or more, or if it is a renewal with **us**, **we** may cancel this policy for one or more of the following reasons:

1) non-payment of premium;

2) the policy was obtained by material misrepresentation, fraud or concealment of material facts;

3) material misrepresentation, fraud or concealment of material facts in presenting a claim, or substantial violation of any of the policy terms;

4) there has been a substantial change or increase in hazard in the risk **we** originally accepted;

5) there is a substantial increase in hazards insured against by reason of wilful or negligent acts or omissions by the insured; or

6) any other reason approved by the Commissioner of Insurance according to rules and regulations set by the Commissioner.

**We** will give **you** at least 30 days notice before the cancellation or non-renewal takes effect. Coverage under this policy will terminate on the effective date and hour stated on the cancellation notice. **Your** return premium, if any, will be calculated on a pro rata basis and refunded at the time of cancellation or as soon as possible. However, refund of unearned premium is not a condition of cancellation.

**Our** Right Not to Renew or Continue:
**Allstate** has the right not to renew or continue the policy beyond the current premium period. However, **we** may do so only for one or more of the reasons set out in the "**Our** Right to Cancel" section. If **we** do not intend to continue or renew the policy, **we** will mail **you** notice at least 30 days before the end of the premium period.

### Concealment Or Fraud

This policy is void if it was obtained by misrepresentation, fraud or concealment of material facts. If it is determined that this policy is void, all premiums paid will be returned to **you** since there has been no coverage under this policy.

**We** do not cover any loss or **occurrence** in which any **insured person** has concealed or misrepresented any material fact or circumstance.

## Section I — Your Property

### Coverage A
### Dwelling Protection

### Property We Cover Under Coverage A:

1. **Your dwelling** including attached structures. Structures connected to **your dwelling** by only a fence, utility line, or similar connection are not considered attached structures.

2. Construction materials and supplies at the **residence premises** for use in connection with **your dwelling**.

3. Wall-to-wall carpeting fastened to **your dwelling**.

## Property We Do Not Cover Under Coverage A:

1. Any structure including fences or other property covered under **Coverage B — Other Structures Protection**.

2. Land, except as specifically provided in **Section I — Additional Protection** under item 11, "Land."

3. Satellite dish antennas and their systems, whether or not attached to **your dwelling**.

## Coverage B
## Other Structures Protection

### Property We Cover Under Coverage B:

1. Structures at the address shown on the Policy Declarations separated from **your dwelling** by clear space.

2. Structures attached to **your dwelling** by only a fence, utility line, or similar connection.

3. Construction materials and supplies at the address of the **residence premises** for use in connection with structures other than **your dwelling**.

4. Wall-to-wall carpeting fastened to other **building structures**.

### Property We Do Not Cover Under Coverage B:

1. Structures used in whole or in part for **business** purposes.

2. Any structure or other property covered under **Coverage A — Dwelling Protection**.

3. Construction materials and supplies at the address of the **residence premises** for use in connection with the **dwelling**.

4. Land, no matter where located, or the replacement, rebuilding, restoration, stabilization or value of any such land.

5. Satellite dish antennas and their systems, whether or not attached to **building structures**.

### Losses We Cover Under Coverages A and B:

We will cover sudden and accidental direct physical loss to property described in **Coverage A — Dwelling Protection** and **Coverage B — Other Structures Protection** except as limited or excluded in this policy.

### Losses We Do Not Cover Under Coverages A and B:

We do not cover loss to the property described in **Coverage A — Dwelling Protection** or **Coverage B — Other Structures Protection** consisting of or caused by:

1. Flood, including, but not limited to surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind.

2. Water or any other substance that backs up through sewers or drains.

3. Water or any other substance that overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from a foundation area of a structure.

4. Water or any other substance on or below the surface of the ground, regardless of its source. This includes water or any other substance which exerts pressure on, or flows, seeps or leaks through any part of the **residence premises**.

   We do cover sudden and accidental direct physical loss caused by fire, explosion or theft resulting from items 1 through 4 listed above.

Page 6

5. Earth movement of any type, including, but not limited to earthquake, volcanic eruption, lava flow, landslide, subsidence, mudflow, pressure, sinkhole, erosion, or the sinking, rising, shifting, creeping, expanding, bulging, cracking, settling or contracting of the earth. This exclusion applies whether or not the earth movement is combined with water.

   **We** do cover sudden and accidental direct physical loss caused by fire, explosion, theft or breakage of glass or safety glazing materials resulting from earth movement.

6. Enforcement of any building codes, ordinances or laws regulating the construction, reconstruction, maintenance, repair, placement or demolition of any **building structure**, other structure or land at the **residence premises.**

   **We** do cover sudden and accidental direct physical loss caused by actions of civil authority to prevent the spread of fire.

7. The failure by any **insured person** to take all reasonable steps to preserve property when the property is endangered by a cause of loss **we** cover.

8. Any substantial change or increase in hazard, if changed or increased by any means within the control or knowledge of an **insured person.**

9. Intentional or criminal acts of or at the direction of any **insured person**, if the loss that occurs:
   a) may be reasonably expected to result from such acts; or
   b) is the intended result of such acts.

   This exclusion applies regardless of whether or not the **insured person** is actually charged with, or convicted of a crime.

10. Nuclear action, meaning nuclear reaction, discharge, radiation or radioactive

contamination or any consequence of any of these. Loss caused by nuclear action is not considered loss by fire, explosion or smoke.

   **We** do cover sudden and accidental direct physical loss by fire resulting from nuclear action.

11. War or warlike acts, including but not limited to, insurrection, rebellion or revolution.

12. Soil conditions, including, but not limited to corrosive action, chemicals, compounds, elements, suspensions, crystal formations or gels in the soil.

In addition, **we** do not cover loss consisting of or caused by any of the following:

13. a)  wear and tear, aging, marring, scratching, deterioration, inherent vice, or latent defect;
    b)  mechanical breakdown;
    c)  growth of trees, shrubs, plants or lawns whether or not such growth is above or below the surface of the ground;
    d)  rust or other corrosion, mold, wet or dry rot;
    e)  smog, smoke from the manufacturing of any controlled substance, agricultural smudging and industrial operations;
    f)  settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings;
    g)  insects, rodents, birds or domestic animals. **We** do cover the breakage of glass or safety glazing materials caused by birds; or
    h)  seizure by government authority.

   If any of (a) through (g) cause the sudden and accidental escape of water or steam from a plumbing, heating or air conditioning system, household appliance or fire protective sprinkler system within **your dwelling, we** cover the direct physical damage caused by the water or steam. If loss to covered property is caused by water or steam not otherwise excluded, **we** will cover

the cost of tearing out and replacing any part of **your dwelling** necessary to repair the system or appliance. This does not include damage to the defective system or appliance from which the water escaped.

14. Freezing of plumbing, fire protective sprinkler systems, heating or air conditioning systems or household appliances, or discharge, leakage or overflow from within the systems or appliances caused by freezing, while the **building structure** is vacant, unoccupied or being constructed unless **you** have used reasonable care to:
    a)  maintain heat in the **building structure**; or
    b)  shut off the water supply and drain the system and appliances.

15. Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not. This exclusion applies only to fences, pavements, patios, swimming pools, foundations, retaining walls, bulkheads, piers, wharves or docks.

16. Seepage, meaning continuous or repeated seepage or leakage over a period of weeks, months, or years, of water, steam or fuel:
    a)  from a plumbing, heating, air conditioning or automatic fire protection system or from within a domestic appliance; or
    b)  from, within or around any plumbing fixtures, including, but not limited to shower stalls, shower baths, tub installations, sinks or other fixtures designed for the use of water or steam.

17. Theft from **your residence premises** while **your dwelling** is under construction, or of materials and supplies for use in construction, until **your dwelling** is completed and occupied.

18. Vandalism or Malicious Mischief if **your dwelling** is vacant or unoccupied for more than 30 consecutive days immediately prior to the vandalism or malicious mischief. A

**dwelling** under construction is not considered vacant or unoccupied.

19. Weather Conditions that contribute in any way with a cause of loss excluded in this section to produce a loss.

20. Planning, Construction or Maintenance, meaning faulty, inadequate or defective:
    a)  planning, zoning, development, surveying, siting;
    b)  design, specifications, workmanship, repair, construction, renovation, modeling, grading, compaction;
    c)  materials used in repair, construction, renovation or remodeling; or
    d)  maintenance

    of property whether on or off the **residence premises** by any person or organization.

21. **We** do not cover loss to covered property described in **Coverage A — Dwelling Protection** or **Coverage B — Other Structures Protection** when:
    a)  there are two or more causes of loss to the covered property; and
    b)  the predominant cause(s) of loss is (are) excluded under **Losses We Do Not Cover**, items 1 through 20 above.

### Coverage C
### Personal Property Protection

### Property We Cover Under Coverage C:
1.  Personal property owned or used by an **insured person** anywhere in the world. When personal property is located at a residence other than the **residence premises**, coverage is limited to 10% of **Coverage C — Personal Property Protection**. This limitation does not apply to personal property in a newly acquired principal residence for the 30 days immediately after **you** begin to move property there or to personal property in student dormitory, fraternity or sorority housing.

2. At **your** option, personal property owned by a guest or **residence employee** while the property is in a residence **you** are occupying.

## Limitations On Certain Personal Property:

Limitations apply to the following groups of personal property. If personal property can reasonably be considered a part of two or more of the groups listed below, the lowest limit will apply. These limitations do not increase the amount of insurance under **Coverage — Personal Property Protection**. The total amount of coverage for each group in any one loss is as follows:

1. $ 200 — Money, bullion, bank notes, coins and other numismatic property.

2. $ 200 — Property used or intended for use in a **business** while the property is away from the **residence premises**. This does not include electronic data processing equipment or the recording or storage media used with that equipment.

3. $ 1,000 — Property used or intended for use in a **business**, including property held as samples or for sale or delivery after sale, while the property is on the **residence premises**. This does not include electronic data processing equipment or the recording or storage media used with that equipment.

4. $ 1,000 — Trading cards, subject to a maximum amount of $250 per card.

5. $ 1,000 — Accounts, bills, deeds, evidences of debt, letters of credit, notes other than bank notes, passports, securities, tickets, and stamps, including philatelic property.

6. $ 1,000 — Manuscripts, including documents stored on electronic media.

7. $ 1,000 — Watercraft, including their attached or unattached trailers, furnishings, equipment, parts and motors.

8. $ 1,000 — Trailers not used with watercraft.

9. $ 1,000 — Theft of jewelry, watches, precious and semi-precious stones, gold other than goldware, silver other than silverware, platinum and furs, including any item containing fur which represents its principal value.

10. $ 1,000 — Any motorized land vehicle parts, equipment or accessories not attached to or located in or upon any motorized land vehicle.

11. $ 2,000 — Theft of firearms.

12. $ 2,500 — Theft of silverware, pewterware and goldware.

13. $ 5,000 — Electronic data processing equipment and the recording or storage media used with that equipment whether or not the equipment is used in a **business**. Recording or storage media will be covered only up to:
    a) the retail value of the media, if pre-programmed; or
    b) the retail value of the media in blank or unexposed form, if blank or self-programmed.

14. $10,000 — Theft of rugs, including, but not limited to any handwoven silk or wool rug, carpet, tapestry, wall-hanging or other similar article whose principal value is determined by its color, design,

quality of wool or silk, quality of weaving, condition or age; subject to a maximum amount of $2,500 per item.

## Property We Do Not Cover Under Coverage C:

1. Personal property specifically described and insured by this or any other insurance.

2. Animals.

3. Motorized land vehicles, including, but not limited to any land vehicle powered or assisted by a motor or engine. **We** do not cover any motorized land vehicle parts, equipment or accessories attached to or located in or upon any motorized land vehicle. **We** do cover motorized land vehicles designed for assisting the handicapped or used solely for the service of the **insured premises** and not licensed for use on public roads.

4. Aircraft and aircraft parts. This does not include model or hobby craft not designed to carry people or cargo.

5. Property of roomers, boarders, tenants not related to an **insured person.**

6. Property located away from the **residence premises** and rented or held for rental to others.

7. Any device, cellular communication system, radar signal reception system, accessory or antenna designed for reproducing, detecting, receiving, transmitting, recording or playing back data, sound or picture which may be powered by electricity from a motorized land vehicle or watercraft and while in or upon a motorized land vehicle or watercraft.

8. Satellite dish antennas and their systems.

## Losses We Cover Under Coverage C:

**We** will cover sudden and accidental direct physical loss to the property described in

**Coverage C — Personal Property Protection,** except as limited or excluded in this policy, caused by:

1. Fire or Lightning.

2. Windstorm or Hail.

   We do not cover:
   a) loss to covered property inside a **building structure,** caused by rain, snow, sleet, sand or dust unless the wind or hail first damages the roof or walls and the wind forces rain, snow, sleet, sand or dust through the damaged roof or wall;
   b) loss to watercraft and their trailers, furnishings, equipment and motors unless inside a fully enclosed **building structure.** However, **we** do cover canoes and rowboats on the **residence premises.**

3. Explosion.

4. Riot or Civil Commotion, including pillage and looting during, and at the site of, the riot or civil commotion.

5. Aircraft, including self-propelled missiles and spacecraft.

6. Vehicles.

7. Smoke.

   **We** do not cover loss caused by smoke from the manufacturing of controlled substances, agricultural smudging or industrial operations.

8. Vandalism and Malicious Mischief.

   **We** do not cover vandalism or malicious mischief if **your dwelling** has been vacant or unoccupied for more than 30 consecutive days immediately prior to the vandalism or malicious

mischief. A **dwelling** under construction in not considered vacant or unoccupied.

9.  Falling objects.

    **We** do not cover loss to personal property inside a **building structure** unless the falling object first damages the exterior walls or roof of the **building structure.**

10. Weight of ice, snow or sleet which causes damage to personal property in a **building structure,** but only if the **building structure** is damaged due to the weight of ice, snow or sleet.

11. Increase or decrease of artificially generated electrical current to electrical appliances, fixtures and wiring.

12. Bulging, burning, cracking or rupture of a steam or hot water heating system, an air conditioning system, an automatic fire protection system or an appliance for heating water.

13. Water or steam that escapes from a plumbing, heating or air conditioning system, an automatic fire protection system, or from a household appliance due to accidental discharge or overflow.

    **We** do not cover loss to the system or appliance from which the water or steam escapes, or loss from water which backs up through sewers or drains or overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from a foundation area of a structure.

14. Freezing of a plumbing, heating or air conditioning system or a household appliance.

    **We** do not cover loss at the **residence premises** under perils (12), (13), and (14) caused by or resulting from freezing while the **building structure** is vacant, unoccupied

or under construction unless **you** have used reasonable care to:
a)  maintain heat in the **building structure;** or
b)  shut off the water supply and drain the water from the systems and appliances.

15. Theft, or attempted theft, including disappearance of property from a known place when it is likely that a theft has occurred. Any theft must be promptly reported to the police.

    **We** do not cover:
a)  theft or attempted theft committed by an **insured person;**
b)  theft in or from the **residence premises** while under construction or of materials and supplies for use in construction, until the **dwelling** is completed and occupied;
c)  theft of any property while at any other residence owned, rented to or occupied by an **insured person** unless the **insured person** is temporarily residing there;
d)  theft of trailers, campers, watercraft, including furnishings, equipment and outboard motors, away from the **residence premises;**
e)  theft from that part of the **residence premises** rented by **you** to other than an **insured person.**

16. Breakage of glass, meaning damage to covered personal property caused by breakage of glass constituting a part of any **building structure** on the **residence premises.** This does not include damage to the glass.

17. Collapse of a building or any part of a building, but collapse does not include bulging, cracking, expansion, settling or shrinkage.

## Losses We Do Not Cover Under Coverage C:

**We** do not cover loss to the property described in **Coverage C — Personal Property Protection** caused by or consisting of:

1. Flood, including, but not limited to surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind.

2. Water or any other substance that backs up through sewers or drains.

3. Water or any other substance that overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from a foundation area of a structure.

4. Water or any other substance on or below the surface of the ground, regardless of its source. This includes water or any other substance which exerts pressure on, or flows, seeps or leaks through any part of the **residence premises**.

   **We** do cover sudden and accidental direct physical loss caused by fire, explosion or theft resulting from items 1 through 4 listed above.

5. Earth movement of any type, including, but not limited to earthquake, volcanic eruption, lava flow, landslide, subsidence, mudflow, pressure, sinkhole, erosion, or the sinking, rising, shifting, creeping, expanding, bulging, cracking, settling or contracting of the earth. This exclusion applies whether or not the earth movement is combined with water.

   **We** do cover sudden and accidental direct physical loss caused by fire, explosion, theft or breakage of glass or safety glazing materials resulting from earth movement.

6. Enforcement of any building codes, ordinances or laws regulating the construction, reconstruction, maintenance, repair, placement or demolition of any **building structure** or other structure at the **residence premises**.

   **We** do cover sudden and accidental direct physical loss to covered property caused by actions of civil authority to prevent the spread of fire.

7. The failure by any **insured person** to take all reasonable steps to save and preserve property when the property is endangered by a cause of loss **we** cover.

8. Any substantial change or increase in hazard, if changed or increased by any means within the control or knowledge of an **insured person**.

9. Intentional or criminal acts of or at the direction of any **insured person**, if the loss that occurs:
   a) may be reasonably expected to result from such acts; or
   b) is the intended result of such acts.

   This exclusion applies regardless of whether or not the **insured person** is actually charged with or convicted of a crime.

10. Nuclear action, meaning nuclear reaction, discharge, radiation or radioactive contamination, or any consequence of any of these. Loss caused by nuclear action is not considered loss by fire, explosion or smoke.

    **We** do cover sudden and accidental direct physical loss by fire resulting from nuclear action.

11. War or warlike acts, including, but not limited to insurrection, rebellion, revolution.

12. Weather Conditions that contribute in any way with a cause of loss excluded in this section to produce a loss.

13. Planning, Construction or Maintenance, meaning faulty, inadequate or defective:
   a) planning, zoning, development, surveying, siting;
   b) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
   c) materials used in repair, construction, renovation or remodeling; or
   d) maintenance

   of property whether on or off the **residence premises** by any person or organization.

14. **We** do not cover loss to covered property described in **Coverage C — Personal Property Protection** when:
   a) there are two or more causes of loss to the covered property; and
   b) the predominant cause(s) of loss is (are) excluded under **Losses We Do Not Cover**, items 1 through 13 above.

## Additional Protection

1. **Additional Living Expense**
   a) **We** will pay the reasonable increase in living expenses necessary to maintain **your** normal standard of living when a direct physical loss **we** cover makes **your residence premises** uninhabitable.

   Payment for covered additional living expense will be limited to the least of the following;
   1) the time to repair or replace the property **we** cover, using due diligence and dispatch; or
   2) if **you** permanently relocate, the shortest time for **your** household to settle elsewhere;
   3) 12 months.
   b) **We** will pay **your** lost fair rental income resulting from a covered loss, less charges and expenses which do not continue, when a loss **we** cover makes the part of the **residence premises you**

rent to others, or hold for rental, uninhabitable. **We** will pay for lost fair rental income for the shortest time required to repair or replace the part rented or held for rental but not to exceed 12 months.
   c) **We** will pay the reasonable and necessary increase in living expenses and the lost fair rental income for up to two weeks should civil authorities prohibit the use of the **residence premises** due to a loss at a neighboring premises caused by a peril **we** insure against.

These periods of time are not limited by the termination of this policy.

**We** do not cover any lost income or expense due to the cancellation of a lease or agreement.

No deductible applies to this protection.

2. **Credit Card, Bank Fund Transfer Card, Check Forgery and Counterfeit Money**
   **We** will pay for loss:
   a) that an **insured person** is legally required to pay for the unauthorized use of any credit card or bank fund transfer card issued to or registered in the name of an **insured person**;
   b) caused by forgery or alteration of a check or negotiable instrument made or drawn upon an **insured person's** account;
   c) to an **insured person** through acceptance in good faith of counterfeit United States or Canadian paper currency.

**Our** maximum limit of liability for any one loss is $1,000. All loss due to forgery or unauthorized use by or involving any one person is considered one loss.

We do not cover:
a) loss arising from any **business** of an **insured person**;
b) loss caused by or at the direction of an **insured person** or any other person who has been entrusted with any credit card or bank fund transfer card;
c) loss arising out of dishonesty of an **insured person**.

When loss is discovered, the **insured person** must give **us** immediate written notice. If the loss involves a credit card, charge plate or bank fund transfer card, the **insured person** must also give immediate written notice to the company or bank that issued the card or plate. Failure to comply with the terms and conditions of the card or plate voids this protection.

**We** will pay only for loss occurring during the policy period, including those losses discovered and reported to **us** within one year after the policy has terminated. **We** have the right to investigate and settle any claim or suit as **we** deem appropriate. Full payment of the amount of insurance for any one loss ends **our** obligation under each claim or suit arising from the loss.

**We** will defend any suit brought against an **insured person** for the enforcement of payment covered under paragraph 2(a) of this protection. The defense will be at **our** expense, with counsel of **our** choice.

**We** have the option to defend an **insured person** or the **insured person's** bank against a suit for the enforcement of payment covered under paragraph 2(b) of this protection. The defense will be at **our** expense, with counsel of **our** choice.

No deductible applies to this protection.

3. **Debris Removal**
   **We** will pay reasonable expenses **you** incur to remove debris of covered property

damaged by a loss **we** cover. If the loss to the covered property and the cost of debris removal are more than the limit of liability shown on the Policy Declarations for the covered property, **we** will pay up to an additional 5% of that limit for debris removal.

4. **Emergency Removal Of Property**
   **We** will pay for sudden and accidental direct physical loss to covered property from any cause while removed from a premises because of danger from a loss **we** cover. Protection is limited to a 30-day period from date of removal. This protection does not increase the limit of liability that applies to the covered property.

5. **Fire Department Charges**
   **We** will pay up to $500 for service charges made by fire departments called to protect **your** property from a loss **we** cover at the **residence premises**. No deductible applies to this protection.

6. **Temporary Repairs After A Loss**
   **We** will reimburse **you** up to $500 for the reasonable and necessary cost **you** incur for temporary repairs to protect covered property from further imminent covered loss following a loss **we** cover. This coverage does not increase the limit of liability applying to the property being repaired.

7. **Trees, Shrubs, Plants and Lawns**
   **We** will pay up to an additional 5% of the limit of liability shown on the Policy Declarations under **Coverage A — Dwelling Protection** for loss to trees, shrubs, plants and lawns at the address of the **residence premises**. **We** will not pay more than $500 for any one tree, shrub, or plant including expenses incurred for removing debris. This coverage applies only to direct physical loss caused by fire or lightning, explosion, riot or civil commotion, aircraft, vehicles not owned by an occupant of the **residence premises**, vandalism or malicious mischief, theft or

collapse of a **building structure** or any part of a **building structure**.

**We** will pay up to $500 per occurrence for reasonable expenses **you** incur for the removal of debris of trees at the address of the **residence premises** for direct loss caused by windstorm, hail, or weight of ice, snow or sleet if:

a)   The fallen tree causes damage to property covered under the Dwelling Protection coverage; or

b)   The windstorm, hail or weight of ice, snow or sleet causes damage to property covered under the Dwelling Protection coverage and the Pennsylvania Governor declares the area in which the **residence premises** is located to be a disaster area due to such weather conditions.

**We** do not cover trees, shrubs, plants, or lawns grown for business purposes.

8.   **Temperature Change**
     **We** will pay for loss to covered personal property in a **building structure** at the **residence premises** resulting from a change in temperature. The change in temperature must result from a covered loss to the **building structure**.

     This coverage does not increase the limit of liability applying to the damaged property.

9.   **Power Interruption**
     **We** will pay for loss to the contents of freezers and refrigerated units on the **residence premises** caused by the interruption of power which occurs off the **residence premises**. If a power interruption is known to an **insured person**, all reasonable means must be used to protect the contents of freezers and refrigerated units.

This coverage does not increase the limit of liability applying to the damaged property.

10.  **Arson Reward**
     **We** will pay up to $5,000 for information leading to an arson conviction in connection with a fire loss to property covered under **Section I** of this policy. The $5,000 limit applies regardless of the number of persons providing information.

11.  **Land**
     If a sudden and accidental direct physical loss results in both a covered loss to the **dwelling**, other than the breakage of glass or safety glazing material, and a loss of land stability, **we** will pay up to $10,000 as an additional amount of insurance for repair costs associated with the land. This includes the costs required to replace, rebuild, stabilize or otherwise restore the land necessary to support that part of the **dwelling** sustaining the covered loss.

The **Section I — Losses We Do Not Cover Under Coverages A and B** reference to earth movement does not apply to the loss of land stability provided under this Additional Protection.

## Section I Conditions

1.   **Deductible**
     **We** will pay when a covered loss exceeds the deductible shown on the Policy Declarations. **We** will then pay only the excess amount, unless **we** have indicated otherwise in this policy.

2.   **Insurable Interest and Our Liability**
     In the event of a covered loss, **we** will not pay for more than an **insured person's** insurable interest in the property covered, nor more than the amount of coverage afforded by this policy.

3.   **What You Must Do After A Loss**
     In the event of a loss to any property that may be covered by this policy, **you** must:

Page 15

a) promptly give **us** or **our** agent notice. Report any theft to the police as soon as possible. If the loss involves a credit card, charge plate or bank fund transfer card, give written notice to the company or bank that issued the card or plate.

b) protect the property from further loss. Make any reasonable repairs necessary to protect it. Keep an accurate record of any repair expenses.

c) separate damaged from undamaged personal property. Give **us** a detailed list of the damaged, destroyed or stolen property, showing the quantity, cost, actual cash value and the amount of loss claimed.

d) give **us** all accounting records, bills, invoices and other vouchers, or certified copies, which **we** may reasonably request to examine and permit **us** to make copies.

e) produce receipts for any increased costs to maintain **your** standard of living while **you** reside elsewhere, and records supporting any claim for loss of rental income.

f) as often as **we** reasonably require:
   1) show **us** the damaged property.
   2) at **our** request, submit to examinations under oath, separately and apart from any other person defined as **you** or **insured person** and sign a transcript of the same.
   3) produce representatives, employees, members of the insured's household or others to the extent it is within the **insured person's** power to do so; and

g) within 60 days after the loss, give **us** a signed, sworn proof of the loss. This statement must include the following information:
   1) the date, time, location and cause of loss;
   2) the interest **insured persons** and others have in the property, including any encumbrances;
   3) the actual cash value and amount of loss for each item damaged, destroyed or stolen;
   4) any other insurance that may cover the loss;
   5) any changes in title, use, occupancy or possession of the property that have occurred during the policy period;
   6) at **our** request, the specifications of any damaged **building structure** or other structure;
   7) evidence supporting any claim under the Credit Card, Bank Fund Transfer Card, Check Forgery and Counterfeit Money protection. State the cause and amount of loss.

4. **Our Settlement Options**
   In the event of a covered loss, **we** have the option to:
   a) repair, rebuild or replace all or any part of the damaged, destroyed or stolen property with property of like kind and quality within a reasonable time; or
   b) pay for all or any part of the damaged, destroyed or stolen property as described in Condition 5 "How We Pay For A Loss."

   Within 30 days after **we** receive **your** signed, sworn proof of loss **we** will notify **you** of the option or options **we** intend to exercise.

5. **How We Pay For A Loss**
   Under **Coverage A — Dwelling Protection, Coverage B — Other Structures Protection** and **Coverage C — Personal Property Protection**, payment for covered loss will be by one or more of the following methods:
   a) Special Payment. At **our** option, **we** may make payment for a covered loss before **you** repair, rebuild or replace the damaged, destroyed or stolen property if:
      1) the whole amount of loss for property covered under **Coverage A**

— **Dwelling Protection** and **Coverage B — Other Structures Protection**, without deduction for depreciation, is less than $2,500 and if the property is not excluded from the Building Structure Reimbursement provision, or;

2) the whole amount of loss for property covered under **Coverage C — Personal Property Protection** without deduction for depreciation, is less than $2,500 and if **your** Policy Declarations shows that the Personal Property Reimbursement provision applies, and the property is not excluded from the Personal Property Reimbursement provision.

b) Actual Cash Value. If **you** do not repair or replace the damaged, destroyed or stolen property, payment will be on an actual cash value basis. This means there may be a deduction for depreciation. Payment will not exceed the limit of liability shown on the Policy Declarations for the coverage that applies to the damaged, destroyed or stolen property, regardless of the number of items involved in the loss.

**You** may make claim for additional payment as described in paragraph c, and paragraph d if applicable, if **you** repair or replace the damaged, destroyed or stolen covered property within 180 days of the actual cash value payment.

c) Building Structure Reimbursement. Under **Coverage A — Dwelling Protection** and **Coverage B — Other Structures Protection, we** will make additional payment to reimburse **you** for cost in excess of actual cash value if **you** repair, rebuild or replace damaged, destroyed or stolen covered property within 180 days of the actual cash value

payment. This additional payment includes the reasonable and necessary expense for treatment or removal and disposal of contaminants, toxins or pollutants as required to complete repair or replacement of that part of a **building structure** damaged by a covered loss.

Building Structure Reimbursement will not exceed the smallest of the following amounts:

1) the replacement cost of the part(s) of the **building structure(s)** for equivalent construction for similar use on the same premises;

2) the amount actually and necessarily spent to repair or replace the damaged **building structure(s)** with equivalent construction for similar use on the same **residence premises;** or

3) the limit of liability applicable to the **building structure(s)** as shown on the Policy Declarations for **Coverage A — Dwelling Protection or Coverage B — Other Structures Protection**, regardless of the number of **building structures** and structures other then **building structures** involved in the loss.

If **you** replace the damaged **building structure(s)** at an address other than shown on the Policy Declarations through construction of a new structure or purchase of an existing structure, such replacement will not increase the amount payable under **building structure** Reimbursement described above. The amount payable under **building structure** Reimbursement described above does not include the value of any land associated with the replacement structure(s).

Building Structure Reimbursement payment will be limited to the difference

between any actual cash value payment made for the covered loss to **building structures** and the smallest of 1), 2) or 3) above.

Building Structure Reimbursement will not apply to:
1) property covered under **Coverage C — Personal Property Protection;**
2) property covered under **Coverage B — Other Structures Protection** that is not a **building structure;**
3) wall-to-wall carpeting, fences, awnings and outdoor antennas whether or not fastened to a **building structure;** or
4) land.

Payment under "a", "b", or "c" above will not include any increased cost due to the enforcement of building codes, ordinances or laws regulating the construction, reconstruction, maintenance, repair, relocation or demolition of **building structures** or other structures.

d) Personal Property Reimbursement. When the Policy Declarations shows that the Personal Property Reimbursement provision applies under **Coverage C — Personal Property Protection, we** will make additional payment to reimburse **you** for cost in excess of actual cash value if **you** repair, rebuild or replace damaged, destroyed or stolen covered personal property or wall-to-wall carpeting within 180 days of the actual cash value payment.

Personal Property Reimbursement payment will not exceed the smallest of the following amounts:
1) the amount actually and necessarily spent to repair or replace the property with similar property of like kind and quality;

2) the cost of repair or restoration; or
3) the limit of liability shown on the Policy Declarations for **Coverage C — Personal Property Protection,** or any special limit of liability described in the policy, regardless of the number of items of personal property involved in the loss.

Personal Property Reimbursement will be limited to the difference between any actual cash value payment made for the covered loss to personal property and the smallest of 1), 2) or 3) above.

Personal Property Reimbursement will not apply to:
1) property insured under **Coverage A — Dwelling Protection and Coverage B — Other Structures Protection,** except wall—to-wall carpeting;
2) antiques, fine arts, paintings, statuary and similar articles which, by their inherent nature, cannot be replaced;
3) articles whose age or history contribute substantially to their value. This includes but is not limited to memorabilia, souvenirs and collector's items; or
4) property that was obsolete or unusable for the originally intended purpose because of age or condition prior to the loss.

6. **Our Settlement Of Loss**
**We** will settle any covered loss with **you** unless another payee is named in the policy. **We** will settle within 60 days after the amount of loss is finally determined. This amount may be determined by an agreement between **you** and **us**, an appraisal award or a court judgment.

Page 18

7. **Appraisal**

If **you** and **we** fail to agree on the amount of loss, either party may make written demand for an appraisal. Upon such demand, each party must select a competent and impartial appraiser and notify the other of the appraiser's identity within 20 days after the demand is received. The appraisers will select a competent and impartial umpire. If the appraisers are unable to agree upon an umpire within 15 days, **you** or **we** can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire.

The appraisers shall then determine the amount of loss, stating separately the actual cash value and the amount of loss to each item. If the appraisers submit a written report of an agreement to **you** and to **us** the amount agreed upon shall be the amount of loss. If they cannot agree, they will submit their differences to the umpire. A written award agreed upon by any two will determine the amount of loss.

Each party will pay the appraiser it chooses, and equally bear expenses for the umpire and all other appraisal expenses.

8. **Abandoned Property**

**We** are not obligated to accept any property or responsibility for any property abandoned by an **insured person**.

9. **Permission Granted To You**
   a) The **residence premises** may be vacant or unoccupied for any length of time, except where a time limit is indicated in this policy for specific perils. A **building structure** under construction is not considered vacant.
   b) **You** may make alterations, additions or repairs, and **you** may complete structures under construction.

10. **Our Right To Recover Payment**

When **we** pay for any loss, an **insured person's** right to recover from anyone else becomes **ours** up to the amount **we** have paid. An **insured person** must protect these rights and help us enforce them. **You** may waive **your** rights to recover against another person for loss involving the property covered by this policy. This waiver must be in writing prior to the date of loss.

11. **Our Rights To Obtain Salvage**

**We** have the option to take all or any part of the damaged or destroyed covered property upon replacement by **us** or payment of the agreed or appraised value.

**We** will notify **you** of **our** intent to exercise this option within 30 days after **we** receive **your** signed, sworn proof of loss.

When **we** settle any loss caused by theft or disappearance, **we** have the right to obtain all or part of any property which may be recovered. An **insured person** must protect this right and inform **us** of any property recovered. **We** will inform **you** of **our** intent to exercise this right within 10 days of **your** notice of recovery to **us**.

12. **Suit Against Us**

No suit or action may be brought against **us** unless there has been full compliance with all policy terms. Any suit or action must be brought within one year after the inception of loss or damage.

13. **Loss To A Pair Or Set**

If there is a covered loss to a pair or set, **we** may:
   a) repair or replace any part of the pair or set to restore it to its actual cash value before the loss; or
   b) pay the difference between the actual cash value of the pair or set before and after the loss.

### 14. Glass Replacement

Payment for loss to covered glass includes the cost of using safety glazing materials when required by law.

### 15. No Benefit To Bailee

This insurance will not benefit any person or organization who may be caring for or handling your property for a fee.

### 16. Other Insurance

If both this insurance and other insurance apply to a loss, we will pay the proportionate amount that this insurance bears to the total amount of all applicable insurance. However, in the event of a loss by theft, this insurance shall be excess over any other insurance that covers loss by theft.

### 17. Property Insurance Adjustment

When the Policy Declarations indicates that the Property Insurance Adjustment condition applies:

The limit of liability shown on the Policy Declarations for **Coverage A — Dwelling Protection** will be revised at each policy anniversary to reflect the rate of change in the Index identified on the Policy Declarations.

The limit of liability for **Coverage A — Dwelling Protection** for the succeeding premium period will be determined by changing the existing limit in proportion to the change in the Index between the time the existing limit was established and the time the change is made. The resulting amount will be rounded to the nearest $1,000.

Adjustment in the limit of liability for **Coverage A — Dwelling Protection** will result in an adjustment in the limit of liability for **Coverage B — Other Structures Protection** and **Coverage C — Personal Property Protection** in accordance with the **Allstate** manual of Rules and Rates.

**We** will not reduce the limit of liability shown on the Policy Declarations without **your** consent.

Any adjustment in premium resulting from the application of this condition will be made based on premium rates in use by **Allstate** at the time a change in limits is made.

**Allstate** has the right to change to another cost index or to withdraw this condition as of a policy anniversary date by giving **you** at least 30 days notice. This applies only if the change or withdrawal applies to all similar policies issued by **Allstate** in **your** state.

### 18. Mortgagee

A covered loss will be payable to the mortgagees named on the Policy Declarations, to the extent of their interest and in the order of precedence. All provisions of **Section I** of this policy apply to these mortgagees.

**We** will:
a) protect the mortgagee's interest in a covered **building structure** in the event of an increase in hazard, intentional or criminal acts of, or directed by, an **insured person**, failure by any **insured person** to take all reasonable steps to save and preserve property after a loss, a change in ownership, or foreclosure if the mortgagee has no knowledge of these conditions; and
b) give the mortgagee at least 10 days notice if **we** cancel this policy.

The mortgagee will:
a) furnish proof of loss within 60 days after notice of the loss if an **insured person** fails to do so;
b) pay upon demand any premium due if an **insured person** fails to do so;
c) notify **us** in writing of any change of ownership or occupancy or any increase in hazard of which the mortgagee has knowledge;

d) give **us** the mortgagee's right of recovery against any party liable for loss; and

e) after a loss, and at **our** option, permit **us** to satisfy the mortgage requirements and receive full transfer of the mortgage.

This mortgagee interest provision shall apply to any trustee or loss payee or other secured party.

# Section II — Family Liability and Guest Medical Protection

## Coverage X
## Family Liability Protection

### Losses We Cover Under Coverage X:

Subject to the terms, conditions and limitations of this policy, **Allstate** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an occurrence to which this policy applies, and is covered by this part of the policy.

**We** may investigate or settle any claim or suit for covered damages against an **insured person**. If an **insured person** is sued for these damages, **we** will provide a defense with counsel of **our** choice, even if the allegations are groundless, false or fraudulent. **We** are not obligated to pay any claim or judgment after **we** have exhausted **our** limit of liability.

### Losses We Do Not Cover Under Coverage X:

1. **We** do not cover any **bodily injury** or **property damage** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any **insured person**. This exclusion applies even if:

   a) such **insured person** lacks the mental capacity to govern his or her conduct;

   b) such **bodily injury** or **property damage** is of a different kind or degree than that intended or reasonably expected; or

   c) such **bodily injury** or **property damage** is sustained by a different person than intended or reasonably expected.

   This exclusion applies regardless of whether or not such **insured person** is actually charged with, or convicted of a crime.

2. **We** do not cover **bodily injury** to an **insured person** or **property damage** to property owned by an **insured person** whenever any benefit of this coverage would accrue directly or indirectly to an **insured person**.

3. **We** do not cover **bodily injury** to any person eligible to receive benefits required to be provided or voluntarily provided by an **insured person** under any workers' compensation, non-occupational disability or occupational disease law.

4. **We** do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of aircraft.

5. **We** do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer. However, this exclusion does not apply to:

   a) a motor vehicle in dead storage or used exclusively on an **insured premises**;

   b) any motor vehicle designed principally for recreational use off public roads, unless that vehicle is owned by an **insured person** and is being used away from an **insured premises**;

   c) a motorized wheel chair;

   d) a vehicle used to service an **insured premises** which is not designed for use on public roads and not subject to motor vehicle registration;

Page 21

e) a golf cart owned by an **insured person** when used for golfing purposes;

f) a trailer of the boat, camper, home or utility type unless it is being towed or carried by a motorized land vehicle;

g) lawn and garden implements under 40 horsepower;

h) **bodily injury** to a **residence employee**.

6. **We** do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of watercraft away from an **insured premises** if the watercraft:

a) has inboard or inboard-outboard motor power of more than 50 horsepower;

b) is a sailing vessel 26 feet or more in length;

c) is powered by one or more outboard motors with more than 25 total horsepower;

d) is designated as an airboat, air cushion, or similar type of watercraft; or

e) is a personal watercraft, meaning a craft propelled by a water jet pump engine and designed to be operated by a person or persons sitting, standing or kneeling on the craft.

This exclusion does not apply to **bodily injury** to a **residence employee**.

7. **We** do not cover **bodily injury** or **property damage** arising out of:

a) the negligent supervision by an **insured person** of any person; or

b) any liability statutorily imposed on any **insured person**

arising from the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any aircraft, watercraft, motor vehicle or trailer which is not covered under **Section II** of this policy.

8. **We** do not cover any **bodily injury** or **property damage** arising out of, consisting of or caused by the ingestion, inhalation or absorption of lead in any form.

9. **We** do not cover any **bodily injury** or **property damage** arising out of, consisting of or caused by the discharge, dispersal, release or escape of asbestos and radon gas.

**We** do cover **bodily injury** which results from such discharge if the discharge is sudden and accidental.

10. **We** do not cover any **bodily injury** or **property damage** arising out of, consisting of or caused by the discharge, dispersal, release or escape of oil from storage tank(s) located at the address stated on the Policy Declarations.

**We** do cover **bodily injury** and **property damage** which results from such discharge if the discharge is sudden and accidental.

11. **We** do not cover any **bodily injury** or **property damage** arising out of any liability statutorily imposed upon any **insured person** in any manner consisting of or caused by the discharge, dispersal, release or escape of lead, asbestos, radon gas or oil from storage tank(s) located at the address stated on the Policy Declarations.

This exclusion does not apply to **bodily injury** or **property damage** losses otherwise covered in this policy.

12. **We** do not cover **bodily injury** or **property damage** arising out of the rendering of, or failure to render, professional services by an **insured person**.

13. **We** do not cover **bodily injury** or **property damage** arising out of the past or present business activities of an **insured person**.

We do cover the occasional or part-time business activities of an **insured person** who is a student under 21 years of age.

14. **We** do not cover **bodily injury** or **property damage** arising out of any premises, other than an **insured premises**, owned, rented or controlled by an **insured person**. This exclusion does not apply to **bodily injury** to a **residence employee**.

15. **We** do not cover **property damage** to property rented to, occupied or used by, or in the care of, an **insured person**. This exclusion does not apply if the **property damage** is caused by fire, explosion or smoke.

16. **We** do not cover any liability an **insured person** assumes arising out of any contract or agreement.

17. **We** do not cover **bodily injury** or **property damage** caused by war or warlike acts, including, but not limited to insurrection, rebellion or revolution.

## Coverage Y
## Guest Medical Protection

### Losses We Cover Under Coverage Y:
**Allstate** will pay the reasonable expenses incurred for necessary medical, surgical, x-ray and dental services; ambulance, hospital, licensed nursing and funeral services; and prosthetic devices, eye glasses, hearing aids, and pharmaceuticals. These expenses, except for funeral services, must be incurred and the services performed within three years from the date of an **occurrence** causing **bodily injury** to which this policy applies, and is covered by this part of the policy.

Each person who sustains **bodily injury** is entitled to this protection when that person is:

1. on the **insured premises** with the permission of an **insured person**; or
2. off the **insured premises**, if the **bodily injury**:
   a) arises out of a condition on the **insured premises** or immediately adjoining ways;
   b) is caused by the activities of an **insured person** or a **residence employee**;
   c) is caused by an animal owned by or in the care of an **insured person**; or
   d) is sustained by a **residence employee**.

### Losses We Do Not Cover Under Coverage Y:
1. **We** do not cover any **bodily injury** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any **insured person**. This exclusion applies even if:
   a) such **insured person** lacks the mental capacity to govern his or her conduct;
   b) such **bodily injury** is of a different kind or degree than intended or reasonably expected; or
   c) such **bodily injury** is sustained by a different person than intended or reasonably expected.

   This exclusion applies regardless of whether or not such **insured person** is actually charged with, or convicted of a crime.

2. **We** do not cover **bodily injury** to any **insured person** or regular resident of the **insured premises**. However, this exclusion does not apply to a **residence employee**.

3. **We** do not cover **bodily injury** to any person eligible to receive any benefits voluntarily provided, or required to be provided, under any workers' compensation, non-occupational disability or occupational disease law.

4. **We** do not cover **bodily injury** arising out of the ownership, maintenance, use,

**Page 23**

occupancy, renting, loaning, entrusting, loading or unloading of aircraft.   .

5. **We** do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer. However, this exclusion does not apply to:
   a) a motor vehicle in dead storage or used exclusively on an **insured premises**;
   b) any motor vehicle designed principally for recreational use off public roads, unless that vehicle is owned by an **insured person** and is being used away from an **insured premises**;
   c) a motorized wheel chair;
   d) a vehicle used to service an **insured premises** which is not designed for use on public roads and not subject to motor vehicle registration;
   e) a golf cart owned by an **insured person** when used for golfing purposes;
   f) a trailer of the boat, camper, home or utility type unless it is being towed or carried by a motorized land vehicle;
   g) lawn or garden implements under 40 horsepower;
   h) **bodily injury** to a **residence employee**.

6. **We** do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of watercraft away from an **insured premises** if the watercraft:

   a) has inboard or inboard-outboard motor power of more than 50 horsepower;
   b) is a sailing vessel 26 feet or more in length;
   c) is powered by one or more outboard motors with more than 25 total horsepower;
   d) is designated as an airboat, air cushion, or similar type of watercraft; or
   e) is a personal watercraft, meaning a craft propelled by a water jet pump engine

and designed to be operated by a person or persons sitting, standing or kneeling on the craft.

This exclusion does not apply to **bodily injury** to a **residence employee**.

7. **We** do not cover **bodily injury** arising out of:
   a) the negligent supervision by any **insured person** of any person; or
   b) any liability statutorily imposed on any **insured person**

   arising from the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any aircraft, watercraft, motorized land vehicle or trailer which is not covered under **Section II** of this policy.

8. **We** do not cover any **bodily injury** arising out of, consisting of or caused by the ingestion, inhalation or absorption of lead in any form.

9. **We** do not cover any **bodily injury** arising out of, consisting of or caused by the discharge, dispersal, release or escape of asbestos and radon gas.

   **We** do cover **bodily injury** which results from such discharge if the discharge is sudden and accidental.

10. **We** do not cover any **bodily injury** arising out of, consisting of or caused by the discharge, dispersal, release or escape of oil from storage tank(s) located at the address stated on the Policy Declarations.

    **We** do cover **bodily injury** which results from such discharge if the discharge is sudden and accidental.

11. **We** do not cover **bodily injury** arising out of the rendering of, or failure to render professional services by, an **insured person**.

12. We do not cover **bodily injury** arising out of the past or present business activities of an **insured person**.

We do cover the occasional or part-time **business** activities of an **insured person** who is a student under 21 years of age.

13. We do not cover **bodily injury** to any person on the **insured premises** because of a business activity or professional service conducted there.

14. We do not cover **bodily injury** arising out of any premises, other than an **insured premises**, owned, rented or controlled by an **insured person**. This exclusion does not apply to **bodily injury** to a **residence employee**.

15. We do not cover **bodily injury** caused by war or warlike acts, including, but not limited to insurrection, rebellion, or revolution.

## Additional Protection

We will pay, in addition to the limits of liability:
1. **Claim Expenses**
   We will pay:
   a)  all costs **we** incur in the settlement of any claim or the defense of any suit against an **insured person**;
   b)  interest accruing on damages awarded until such time as **we** have paid, formally offered, or deposited in court the amount for which **we** are liable under this policy; interest will be paid only on damages which do not exceed **our** limits of liability;
   c)  premiums on bonds required in any suit **we** defend; **we** will not pay bond premiums in an amount that is more than **our** limit of liability; **we** have no obligation to apply for or furnish bonds;
   d)  up to $150 per day for loss of wages and salary, when **we** ask **you** to attend trials and hearings;

   e)  any other reasonable expenses incurred by an **insured person** at **our** request.

2. **Emergency First Aid**
   **We** will pay reasonable expenses incurred by an **insured person** for first aid to other persons at the time of an accident involving **bodily injury** covered under this policy.

3. **Damage To Property Of Others**
   At **your** request, **we** will pay up to $500 each time an **insured person** causes **property damage** to someone else's property. At **our** option, **we** will pay the cost to either repair or replace the property damaged by an **insured person**, without deduction for depreciation.

   We will not pay for **property damage**:
   a)  to property covered under **Section I** of this policy;
   b)  to property intentionally damaged by an **insured person** who has attained the age of 13;
   c)  to property owned by or rented to an **insured person**, any tenant of an **insured person**, or any resident in **your** household; or
   d)  arising out of:
       1) past or present **business** activities;
       2) any act or omission in connection with a premises, other than an **insured premises**, owned, rented or controlled by an **insured person**; or
       3) the ownership or use of a motorized land vehicle, trailer, aircraft or watercraft.

## Section II Conditions

1. **What You Must Do After An Accidental Loss**
   In the event of **bodily injury** or **property damage**, **you** must do the following:
   a)  Promptly notify **us** or **our** agent stating:
       1)  **your** name and policy number;
       2)  the date, the place and the circumstances of the loss;

**Page 25**

   3)   the name and address of anyone
        who might have a claim against an
        **insured person;**
   4)   the names and addresses of any
        witnesses.
b)   Promptly send **us** any legal papers
     relating to the accident.
c)   At **our** request, an **insured person** will:
   1)   cooperate with **us** and assist **us** in
        any matter concerning a claim or
        suit;
   2)   help **us** enforce any right of
        recovery against any person or
        organization who may be liable to an
        **insured person;**
   3)   attend any hearing or trial.
d)   Under the **Damage To Property Of
     Others** protection, give **us** a sworn
     statement of the loss. This must be
     made within 60 days after the date of
     loss. Also, an **insured person** must be
     prepared to show **us** any damaged
     property under that person's control.

Any **insured person** will not voluntarily pay
any money, assume any obligations or incur
any expense, other than for first aid to others
at the time of the loss as provided for in this
policy.

2.   **What An Injured Person Must Do —
     Coverage Y — Guest Medical Protection**
     If someone is injured, that person, or
     someone acting for that person, must do the
     following:
     a)   Promptly give **us** written proof of the
          loss. If **we** request, this must be done
          under oath.
     b)   Give **us** written authorization to obtain
          copies of all medical records and
          reports.
     c)   Permit doctors **we** select to examine the
          injured person as often as **we** may
          reasonably require.

3.   **Our Payment Of Loss — Coverage Y —
     Guest Medical Protection**
     **We** may pay the injured person or the
     provider of the medical services. Payment
     under this coverage is not an admission of
     liability by **us** or an **insured person.**

4.   **Our Limits Of Liability**
     Regardless of the number of **insured
     persons,** injured persons, claims, claimants
     or policies involved, **our** total liability under
     **Coverage X — Family Liability Protection**
     for damages resulting from one occurrence
     will not exceed the limit shown on the Policy
     Declarations. All **bodily injury** and **property
     damage** resulting from continuous or
     repeated exposure to the same general
     conditions is considered the result of one
     **occurrence.**

     **Our** total liability under **Coverage Y — Guest
     Medical Protection** for all medical expenses
     payable for **bodily injury,** to any one person,
     shall not exceed the "each person" limit
     shown on the Policy Declarations.

5.   **Bankruptcy**
     **We** are not relieved of any obligation under
     this policy because of the bankruptcy or
     insolvency of an **insured person.**

6.   **Our Rights To Recover Payment —
     Coverage X — Family Liability Protection**
     When **we** pay any loss, an **insured person's**
     right to recover from anyone else becomes
     **ours** up to the amount **we** have paid. An
     **insured person** must protect these rights
     and help **us** enforce them.

7.   **Suit Against Us**
     a)   No suit or action can be brought against
          **us** unless there has been full compliance
          with all the terms of this policy.
     b)   No suit or action can be brought against
          **us** under **Coverage X — Family
          Liability Protection** until the obligation
          of an **insured person** to pay is finally
          determined either by judgment against

the **insured person** after actual trial, or by written agreement of the **insured person**, injured person, and **us**.

c) No one shall have any right to make **us** a party to a suit to determine the liability of an **insured person**.

8. **Other Insurance — Coverage X — Family Liability Protection**
This insurance is excess over any other valid and collectible insurance except insurance that is written specifically as excess over the limits of liability that apply to this policy.

## Selection III — Optional Protection

### Optional Coverages You May Buy

The following Optional Coverages may supplement coverages found in **Section I** or **Section II** and apply only when they are indicated on the Policy Declarations. The provisions of this policy apply to each Optional Coverage in this section unless modified by the terms of the specific Optional Coverage.

1. **Coverage BC**
**Building Codes**
**We** will pay up to 10% of the amount of insurance on the Policy Declarations under **Coverage A — Dwelling Protection** to comply with local building codes after covered loss to **dwelling** or when repair or replacement results in increased cost due to the enforcement of any building codes, ordinances or laws regulating the construction, reconstruction, maintenance, repair or demolition of the **dwelling**.

2. **Coverage BP**
**Increased Coverage On Business Property**
The $1,000 limitation on business property located on the **residence premises**, under **Coverage C — Personal Property Protection**, is increased to the amount shown on the Policy Declarations. This increased coverage includes property held as samples or for sale or delivery after sale,

while the property is on the **residence premises**.

3. **Coverage DP**
**Increased Coverage On Electronic Data Processing Equipment**
The $5,000 limitation on electronic data processing equipment under **Coverage C — Personal Property Protection**, and the recording or storage media used with that equipment, is increased to the amount shown on the Policy Declarations.

4. **Coverage F**
**Fire Department Charges**
The $500 limit applying to the fire department service charges under **Additional Protection** is increased to the amount shown on the Policy Declarations.

5. **Coverage G**
**Loss Assessments**
If **your residence premises** includes a **building structure** which is constructed in common with one or more similar buildings, and **you** are a member of, and subject to the rules of, an association governing the areas held in common by all building owners as members of the association, the **insured premises** means the **building structure** occupied exclusively by **your** household as a private residence, including the grounds, related structures and private approaches to them.

**We** will pay **your** share of any special assessments charged against all building owners by the association up to the limit of liability shown on the Policy Declarations, when the assessment is made as a result of:

a) sudden and accidental direct physical loss to the property held in common by all building owners caused by a loss **we** cover under **Section I** of this policy; or

b) **bodily injury** or **property damage** covered under **Section II** of this policy.

Any reduction or elimination of payments for losses because of any deductible applying to the insurance coverage of the association of building owners collectively is not covered under this protection.

**Allstate** will pay only when the assessment levied against the **insured person**, as a result of any one loss, for **bodily injury** or **property damage** exceeds $250 and then only for the amount of such excess. This coverage is not subject to any deductible applying to **Section I** of this policy.

In the event of an assessment, this coverage is subject to all the exclusions applicable to **Sections I** and **II** of this policy and the **Section I and II** Conditions, except as otherwise noted.

This coverage is excess over any insurance collectible under any policy or policies covering the association of building owners.

6. **Coverage J**
   **Extended Coverage On Jewelry, Watches and Furs**
   **Coverage C — Personal Property Protection** is extended to pay for sudden and accidental direct physical loss to the following property, subject to the provisions in this coverage:
   a) jewelry, watches, gems, precious and semi-precious stones, gold, platinum; and
   b) furs, including any item containing fur which represents its principal value.

   The total amount of coverage and per item limit is shown on the Policy Declarations. This amount is not in addition to the amount of insurance applying to **Coverage C — Personal Property Protection**. However, in no event will coverage be less than would have applied in the absence of Coverage J.

   **We** do not cover loss caused by or consisting of:

   a) intentional or criminal acts of or at the direction of any **insured person**, if the loss that occurs:
      1) may be reasonably expected to result from such acts; or
      2) is the intended result of such acts.
   b) wear and tear, gradual deterioration, inherent vice, insects or vermin;
   c) nuclear action, meaning nuclear reaction, discharge, radiation or radioactive contamination or any consequence of any of these. Loss caused by nuclear action is not considered a loss by fire, explosion or smoke.

      **We** do cover sudden and accidental direct physical loss by fire resulting from nuclear action.
   d) war or warlike acts, including, but not limited to: insurrection, rebellion or revolution.
   e) failure by any **insured person** to take all reasonable steps to preserve property during and after a loss or when the property is endangered by a cause of loss **we** cover.

   Any deductible shown on the Policy Declarations applicable to **Coverage C — Personal Property Protection**, also applies to a loss under this coverage.

7. **Coverage K**
   **Incidental Office, Private School Or Studio**
   a) The $200 and $1,000 limits applying to property used or intended for use in a **business** under **Coverage C — Personal Property Protection** do not apply to equipment, supplies and furnishings used in a described office, private school or studio at **your residence premises**. This does not include electronic data processing equipment or the recording or storage media used with that equipment.

The **Coverage K** limits are shown on the Policy Declarations. The first limit applies to property on the **residence premises**. The second limit applies to property while away from the **residence premises**. These limits are not in addition to **Coverage C — Personal Property Protection, Limitations On Certain Personal Property** on property used or intended for use in a business. The increased coverage does not include property held for sample, sale or delivery after sale.

b) **Coverage X — Family Liability Protection** and **Coverage Y — Guest Medical Protection** are extended to cover a described office, private school or studio occupied by an **insured person**. The occupancy of the described property shall not be considered a **business**.

We do not cover **bodily injury** to:
a) any employee other than a **residence employee**; or
b) any person arising out of corporal punishment administered by or at the direction of an **insured person**.

8. **Coverage LR**
   **Lock Replacement**
   **Coverage A — Dwelling Protection** is extended to include reasonable expenses **you** incur to replace or re-key exterior door locks at the **residence premises** with locks or cylinders of like kind and quality. Coverage is provided when a key to a lock is stolen as part of a covered theft loss. The limit of liability under this coverage following any one theft loss is $250.

9. **Coverage M**
   **Increased Coverage On Money**
   The $200 limitation on money, bullion, bank notes, coins and other numismatic property under **Coverage C — Personal Property**

Protection is increased to the amount shown on the Policy Declarations.

10. **Coverage P**
    **Business Pursuits**
    **Coverage X — Family Liability Protection** and **Coverage Y — Guest Medical Protection** are extended to cover specified **business** pursuits of an **insured person**.

    **We** do not cover:
    a) **bodily injury** or **property damage** arising out of the business pursuits of an **insured person** when the **business** is owned or financially controlled by the **insured person**. This also means a partnership or joint venture of which an **insured person** is a partner or member;
    b) **bodily injury** or **property damage** arising out of the rendering or failure to render a professional service of any nature, other than teaching;
    c) **bodily injury** to a fellow employee of an **insured person** arising out of and in the course of employment;
    d) **bodily injury** or **property damage** when an **insured person** is a member of a teaching staff or faculty of any school or college and the **bodily injury** or **property damage** arises out of the maintenance or use of saddle animals, vehicles used with saddle animals, motorized land vehicles, aircraft or watercraft when owned, hired or operated by an **insured person** or used for the purpose of instruction; or
    e) **bodily injury** to any person arising out of corporal punishment administered by or at the direction of an **insured person** when an **insured person** is a member of the teaching staff or faculty of any school of instruction.

11. **Coverage S**
    **Increased Coverage On Securities**
    The $1,000 limitation on accounts, bills, deeds, evidences of debt, letters of credit, notes other than bank notes, passports,

**Page 29**

securities, tickets, or stamps, including philatelic property, covered under **Coverage C — Personal Property Protection,** is increased to the amount shown on the Policy Declarations.

12. **Coverage SD**
    **Satellite Dish Antennas**
    **Coverage C — Personal Property Protection** is extended to pay for sudden and accidental direct physical loss to satellite dish antennas and their systems on **your residence premises** , subject to the provisions of **Coverage C — Personal Property Protection.**

    The amount of coverage is shown on the Policy Declarations.

13. **Coverage SE**
    **Portable Cellular Communication Systems**
    **Coverage C — Personal Property Protection** is extended to portable cellular

communication systems in or upon a motorized land vehicle or watercraft. This coverage applies only to portable systems that can be powered by electricity from a motorized land vehicle or watercraft. Coverage applies whether or not the portable cellular communication system is used in a **business**.

The amount of coverage is shown on the Policy Declarations.

14. **Coverage ST**
    **Increased Coverage On Theft of Silverware**
    The $2,500 limitation on theft of silverware, pewterware and goldware under is increased to the amount shown on the Policy Declarations.

IN WITNESS WHEREOF, **Allstate** has caused this policy to be signed by its Secretary and its President at Northbrook, Illinois, and, if required by state law, this policy shall not be binding unless countersigned on the Policy Declarations by an authorized agent of **Allstate.**

Secretary

President,
Personal Property & Casualty

**Page 30**

**Allstate Insurance Company**

# Policy Endorsement
*This Endorsement Changes Your Policy—Keep It With Your Policy*

## Amendment of Policy Provisions – AP4664-1

I.   The **General** section is amended as follows:

   A.   Under the provision titled **Cancellation**, the following is added:

   Any unearned premium amounts under $2.00 will be refunded only upon **your** request.

   B.   The following provisions are added:

   **Conditional Reinstatement**
   If **we** mail a cancellation notice because **you** didn't pay the required premium when due and **you** then tender payment by check, draft, or other remittance which is not honored upon presentation, **your** policy will terminate on the date and time shown on the cancellation notice and any notice **we** issue which waives the cancellation or reinstates coverage is void. This means that **Allstate** will not be liable under this policy for claims or damages after the date and time indicated on the cancellation notice.

   **Payment**
   If at any time, **your** payment of any premium amount due is made by check, electronic transaction, or other remittance which is not honored because of insufficient funds or a closed account; **you** will be charged a fee.

All other terms and conditions of the policy apply.

Page 1 of 1

PROP *51000371301315300067412t2*

## Allstate Insurance Company

# Policy Endorsement

*The following endorsement changes your policy. Please read this document carefully and keep it with your policy*

### Sinkhole Activity Coverage Endorsement – AP4868

When this endorsement applies, the following coverage is added:

**Sinkhole Activity Coverage**
We will cover sudden and accidental direct physical loss to the dwelling or other building structure covered under Coverage A—Dwelling Protection or Coverage B—Other Structures Protection caused by sinkhole activity or catastrophic ground cover collapse, including the expenses incurred to:
a)   stabilize the land and dwelling or other building structure; and
b)   repair the foundation of the dwelling or other building structure.

Payment for sinkhole loss caused by sinkhole activity or catastrophic ground cover collapse will be paid pursuant to Section I Conditions item 5. How We Pay For A Loss. Reimbursement for additional living expenses incurred due to sinkhole loss will be paid pursuant to Section I Additional Protection, item 1. Additional Living Expense.

If all the following apply:
a)   you submit a claim for sinkhole loss without good faith grounds for submitting such claim;
b)   you demand testing by a professional engineer or geologist to determine the presence or absence of sinkhole loss;
c)   before ordering testing by a professional engineer or geologist, we inform you in writing of your potential liability for reimbursement for sinkhole loss testing and we give you the opportunity to withdraw your claim for sinkhole loss; and
d)   we obtain written certification from a professional engineer or geologist that there is no sinkhole loss or that the cause of the damage was not sinkhole activity;
then you must reimburse us for 50% of the actual costs of such testing, up to $5,000 with respect to any such claim.

If we deny your sinkhole claim without having a professional engineer or geologist perform testing to determine the presence or absence of sinkhole loss or other cause of damage, you may demand testing in writing within 60 days after you receive notification that your sinkhole claim has been denied. You must pay the lesser of 50% or $5,000 of the actual costs of the analyses and services, which will be reimbursed if the professional engineer or geologist provides written certification that there is sinkhole loss.

For the purposes of this endorsement, the following changes are made to your policy:

i.    In the General section, under **Definitions Used In This Policy**, the following definitions are added:

      "Sinkhole activity" —means settlement or systematic weakening of the earth supporting the dwelling or other building structure covered under Coverage A—Dwelling Protection or Coverage B—Other Structures Protection, but only if the settlement or systematic weakening results from contemporaneous movement or raveling of soils, sediments, or rock materials into subterranean voids created by the effect of water on limestone or similar rock formations.

Page 1



# Allstate Insurance Company

"Catastrophic ground cover collapse" — means geological activity arising out of sink hole activity that results in all the following:

a)   the abrupt collapse of the ground cover;

b)   a depression in the ground cover clearly visible to the naked eye;

c)   structural damage to the dwelling or other building structure, including the foundation, that we cover under Coverage A — Dwelling Protection or Coverage B — Other Structures Protection; and

d)   that dwelling or other building structure being condemned and ordered to be vacated by the governmental agency authorized by law to issue such an order.

"Sinkhole loss" — means structural damage to the dwelling or other building structure, including the foundation, that we cover under Coverage A — Dwelling Protection or Coverage B — Other Structures Protection caused by sinkhole activity or catastrophic ground cover collapse.

Sinkhole loss does not mean loss consisting of or caused by man-made conditions including, but not limited to, mine subsidence, hydraulic fracturing, the collapse of storm and sewer drains, or the collapse of rapid transit tunnels.

"Structural damage" — means the dwelling or other building structure that we cover under Coverage A — Dwelling Protection or Coverage B — Other Structures Protection, regardless of the date of construction, has experienced the following:

a)   Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 or the Pennsylvania Uniform Construction Code, which results in settlement related damage to the interior such that the interior building structure or members become unfit for service or represents a safety hazard as defined within the Pennsylvania Uniform Construction Code;

b)   Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 or the Pennsylvania Uniform Construction Code, which results in settlement related damage to the primary structural members or primary structural systems that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those primary structural members or primary structural systems exceeds one and one-third the nominal strength allowed under the Pennsylvania Uniform Construction Code for new buildings of similar structure, purpose, or location;

c)   Damage that results in listing, leaning, or buckling of the exterior load bearing walls or other vertical primary structural members to such an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined in the Pennsylvania Uniform Construction Code; or

d)   Damage that results in the building, or any portion of the building containing primary structural members or primary structural systems, being significantly likely to imminently collapse because of the movement or instability of the ground within the influence zone of the supporting ground within the shear plane necessary for the purpose of supporting such building as defined in the Pennsylvania Uniform Construction Code.

"Primary structural member" — means a structural element designed to provide support and stability for the vertical or lateral loads of the overall structure.

"Primary structural system" — means an assemblage of primary structural members.

"Rebate" — means a remuneration, payment, gift, discount, or transfer or any item of value to you by or on behalf of a person performing repairs as an incentive or inducement to obtain repairs performed by that person.

## Allstate Insurance Company

II.  In Section I — Your Property, under Losses We Do Not Cover Under Coverages A and B, item 5. is replaced by the following:

5.  Earth movement of any type, including, but not limited to earthquake, volcanic eruption, lava flow, landslide, subsidence, mudflow, pressure, sinkhole, erosion, or the sinking, rising, shifting, creeping, expanding, bulging, cracking, settling or contracting of the earth. This exclusion applies whether or not the earth movement is combined with water.
    However, we will not apply this exclusion to sudden and accidental direct physical loss to the dwelling or other building structures covered under Coverage A — Dwelling Protection or Coverage B — Other Structures Protection which consists of, or is caused by sinkhole activity or catastrophic ground cover collapse.

    We do cover sudden and accidental direct physical loss caused by fire, explosion, theft or breakage of glass or safety glazing materials resulting from earth movement.

III.  In Section I — Personal Property Protection, under Losses We Cover Coverage C the following is added:

Sinkhole activity, but only if Sinkhole Activity Coverage is shown on the Policy Declarations. We do not cover losses caused by sinkhole activity under Coverage C — Personal Property Protection unless the sinkhole activity causes structural damage to the dwelling, including the foundation, that we cover under Coverage A — Dwelling Protection.

IV.  In Section I Conditions, under condition 5. How We Pay For A Loss, the following is added to the Building Structure Reimbursement provision:

The following subparagraphs (1) and (2) apply to Sinkhole Activity Coverage:
(1)  In the event of a covered sinkhole loss, payment to repair, rebuild or replace the damaged or destroyed dwelling or other building structure will be on an actual cash value basis until you enter into a contract for the performance of building stabilization or foundation repairs. Payment on an actual cash value basis means there may be a deduction for depreciation. Once you enter into a contract for the performance of building stabilization or foundation repairs, we shall pay the additional amounts necessary to begin and perform the repairs, rebuilding or replacement of the damaged or destroyed dwelling or other building structure, including the foundation, as the work is performed and the expenses are incurred. Notwithstanding any other provision contained in this policy, we will not pay any amounts for underpinning or grouting until you enter into a contract for the performance of building stabilization or foundation repairs. The stabilization and all other repairs to the dwelling or other building structure must be completed within 12 months after you enter into the contract, unless:
     (a)  there is mutual agreement between you and us;
     (b)  the claim is in litigation; or
     (c)  the claim is under appraisal or mediation.

You may not accept a rebate from whoever performs the stabilization and repairs.

(2)  For direct physical losses caused by sinkhole activity, other than total losses, payment includes the reasonable and necessary cost to replace, rebuild, stabilize or otherwise restore the earth necessary to support that part of the dwelling or other building structure, including the foundation, sustaining a covered sinkhole loss, but only if you enter into a contract to stabilize the earth and dwelling or other building structure and repair the foundation in a manner consistent with the

Page 3



## Allstate Insurance Company

recommendations of the engineer we select or approve within 90 days after we confirm coverage for the sinkhole loss and notify you of such confirmation. This time period is tolled if either party invokes the appraisal process, and begins again ten days after the conclusion of the appraisal process. Payments under such contract will be made in consultation with you.

Sinkhole Activity Coverage does not increase the limit of liability applying to the covered property.

All other terms and conditions apply.



Northeast Property MCO
1200 ATWATER DRIVE
MALVERN PA 19355

You're in good hands.

ıılııʼllılıʼlıllıılıʼllıʼlıllıʼlıʼllılıʼlıʼlıllılıʼlılın
CAROL ANDERSON PO BX 14
3665 STATION AVE
CENTER VALLEY PA 180349579

April 19, 2017

INSURED: CAROL ANDERSON
DATE OF LOSS: March 16, 2017
CLAIM NUMBER: 0449868842 WJH

PHONE NUMBER: 8002800-714-8509
FAX NUMBER: 866-547-5534
OFFICE HOURS: Mon - Fri 8:00 am - 5:30 pm,
Sat 8:00 am - 2:00 pm

POLICY NUMBER: 000008747936

## Re: Your Claim Status

Dear CAROL ANDERSON PO BX 14,

Thank you for contacting me today to discuss your coverage and the claim process.

After reviewing your policy we were unable to provide coverage for detached garage. Please refer to Section 1 Your Property Coverage A Dwelling Protection, paragraph Losses We Cover Under Coverages A and B of your AP324 policy. It states: We will cover sudden and accidental direct physical loss to property described in Coverage A Dwelling Protection and Coverage B Other Structures Protection except as limited or excluded in this policy.

Losses We Do Not Cover Under Coverages A and B:
We do not cover loss to the property described in Coverage A Dwelling Protection or Coverage B Other Structures Protection consisting of or caused by:

13. a) wear and tear, aging, marring, scratching, deterioration, inherent vice, or latent defect;
b) mechanical breakdown;
c) growth of trees, shrubs, plants or lawns whether or not such growth is above or below the surface of the ground;
d) rust or other corrosion, mold, wet or dry rot;
e) smog, smoke from the manufacturing of any controlled substance, agricultural smudging and industrial operations;
f) settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings;
g) insects, rodents, birds or domestic animals. We do cover the breakage of glass or safety glazing materials caused by birds; or
h) seizure by government authority,

If any of (a) through (g) cause the sudden and accidental escape of water or steam from a plumbing, heating or air conditioning system, household appliance or fire protective sprinkler system within your dwelling, we cover the direct physical damage caused by the water or steam. If loss to covered property is caused by water or steam not otherwise excluded, we will cover the cost of tearing out and replacing any part of your dwelling necessary to repair the system or appliance. This does not include damage to the defective system or appliance from which the water escaped.

19. Weather Conditions that contribute in any way with a cause of loss excluded in this section to produce a loss.

20. Planning, Construction or Maintenance, meaning faulty, inadequate or defective:
a) planning, zoning, development, surveying, siting;
b) design, specifications, workmanship, repair, construction, renovation, modeling, grading, compaction;
c) materials used in repair, construction, renovation or remodeling; or



EXHIBIT

B

0449868842 WJH

3000020170419TR014001170001001001067

d) maintenance

of property whether on or off the residence premises by any person or organization.

21. We do not cover loss to covered property described in Coverage A Dwelling Protection or Coverage B Other Structures Protection when:
a) there are two or more causes of loss to the covered property; and
b) the predominant cause(s) of loss is (are) excluded under Losses We Do Not Cover, items 1 through 20 above.

12. Suit Against Us
No suit or action may be brought against us unless there has been full compliance with all policy terms. Any suit or action must be brought within one year after the inception of loss or damage

We were unable to provide payment on this claim because: The loss is not sudden/acid. The poor condition as outlined by our engineer's report of the detach garage and long term neglect is not covered under your policy.

For the above stated reasons and any other exclusions or conditions contained in the policy applicable, Allstate will be unable to provide coverage for this loss.

## We're Here to Help You
I hope that you understand the basis for this decision.  Please call me at the number below and refer to our claim number should you wish to discuss any aspect of this case, including this letter.

Sincerely,

*JEROME HENNESSY*

JEROME HENNESSY
800-280-07148509 Ext. 1908509
Allstate Insurance Company

# Policy Endorsement

*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

*This Endorsement Changes Your Policy — Keep It With Your Policy*

## Building Structure Reimbursement
## Extended Limits Endorsement — AP357

For an additional premium and when the Policy Declarations indicates that the "Building Structure Reimbursement Extended Limits Endorsement" applies, the following amendment is made to condition 5 (titled "How We Pay For A Loss") in **Section I Conditions**:

In provision c) (titled "Building Structure Reimbursement."), item 3) of the second paragraph is replaced by the following:

3)   120% of the limit of liability applicable to the **building structure(s)** as shown on the Policy Declarations for **Coverage A — Dwelling Protection** or **Coverage B — Other Structures Protection**, regardless of the number of **building structures** and structures other than **building structures** involved in the loss.

This endorsement applies only if:

1)   **You** insure **your dwelling**, attached structures and detached **building structures** to 100% of replacement cost as determined by:
a)   an Allstate Home Replacement Cost Estimator completed and based on the accuracy of information **you** furnished; or
b)   our inspection of **your residence premises**;

2)   **You** have accepted the Property Insurance Adjustment Condition, agree to accept each annual adjustment in the **Coverage A — Dwelling Protection** limit of liability, and pay any additional premium charged; and

3)   **You** notify **us** within 60 days of the start of any modifications that increase the aggregate value of **your dwelling**, attached structures and detached **building structures** at the **residence premises** by $5,000 or more, and pay any resulting additional premium due for the increase in value.

All other policy terms and conditions apply.

(4/94)